## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RONALD A. KATZ TECHNOLOGY
LICENSING, L.P.,

        Plaintiff,

    v.

AHOLD U.S.A., INC.; THE STOP & SHOP
SUPERMARKET COMPANY LLC; GIANT
FOOD STORES, LLC; GIANT FOOD LLC;
GIANT FOOD INC.; EXPRESS SCRIPTS, INC.,

        Defendants.

CA NO. 06-545-GMS

### <u>ANSWER OF DEFENDANT EXPRESS SCRIPTS, INC.</u>

Defendant Express Scripts, Inc. ("ESI") answers Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Amended Complaint for Patent Infringement as follows:

### <u>THE PARTIES</u>

1.    ESI assumes on the basis of Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement ("Complaint") that Ronald A. Katz Technology Licensing, L.P. ("Katz") is, as provided in paragraph 1 of the Complaint, a California limited partnership with its principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

2.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 2 of the Complaint and therefore denies such allegations.

3.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 3 of the Complaint and therefore denies such allegations.

4.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 4 of the Complaint and therefore denies such allegations.

5.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 5 of the Complaint and therefore denies such allegations.

6.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 6 of the Complaint and therefore denies such allegations.

7.      ESI admits the allegations contained in paragraph 7 of the Complaint.

8.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 8 of the Complaint and therefore denies such allegations.

9.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 9 of the Complaint and therefore denies such allegations.

10.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 10 of the Complaint and therefore denies such allegations.

11.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 11 of the Complaint and therefore denies such allegations.

12.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 12 of the Complaint and therefore denies such allegations.

13.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 13 of the Complaint and therefore denies such allegations.

14.      ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 14 of the Complaint and therefore denies such allegations.

## JURISDICTION AND VENUE

15.     ESI admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 16 of the Complaint and therefore denies such allegations.

17.     ESI admits that it is subject to this Court's personal jurisdiction because it is a Delaware corporation and has designated a registered agent in this district.  ESI denies the remainder of the allegations contained in paragraph 17 of the Complaint.

18.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 18 of the Complaint and therefore denies such allegations.

19.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 19 of the Complaint and therefore denies such allegations.

20.     ESI admits that venue is proper in the District of Delaware as to ESI.  ESI denies that it has committed acts of patent infringement in the District of Delaware.  As the allegations of paragraph 20 relate to the other named defendants in this action, ESI lacks information sufficient to form a belief as to whether venue is proper in this judicial district as to such other defendants and therefore denies such allegations.

## BACKGROUND

21.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 21 of the Complaint and therefore denies such allegations.

22.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 22 of the Complaint and therefore denies such allegations.

23.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 23 of the Complaint and therefore denies such allegations.

24.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 24 of the Complaint and therefore denies such allegations.

25.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 25 of the Complaint and therefore denies such allegations.

26.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 26 of the Complaint and therefore denies such allegations.

27.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 27 of the Complaint and therefore denies such allegations.

28.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 28 of the Complaint and therefore denies such allegations.

29.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 29 of the Complaint and therefore denies such allegations.

30.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 30 of the Complaint and therefore denies such allegations.

31.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 31 of the Complaint and therefore denies such allegations.

32.     ESI denies that it employs the inventions of certain of the patents-in-suit. ESI admits that Katz has sought to enter into licensing negotiations with ESI, and ESI also admits that Katz and ESI have not agreed to enter into a license.  As to the remainder of the allegations contained in paragraph 32 of the Complaint, ESI lacks information sufficient to form a belief and therefore denies such allegations.

### THE ASSERTED PATENTS

33.     ESI admits that U.S. Patent No. 4,792,968 ("the '968 patent") is entitled "Statistical Analysis System For Use With Public Communication Facility" and on its

face lists Ronald A. Katz as the sole inventor and December 20, 1988 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 33, and on that basis denies each and every remaining allegation in paragraph 33.

34.     ESI admits that U.S. Patent No. 4,930,150 ("the '150 patent") is entitled "Telephonic Interface Control System" and on its face lists Ronald A. Katz as the sole inventor and May 29, 1990 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 34, and on that basis denies each and every remaining allegation in paragraph 34.

35.     ESI admits that U.S. Patent No. 5,128,984 ("the '984 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as the sole inventor and July 7, 1992 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 35, and on that basis denies each and every remaining allegation in paragraph 35.

36.     ESI admits that U.S. Patent No. 5,251,252 ("the '252 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as the sole inventor and October 5, 1993 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI lacks sufficient

information or knowledge either to admit or deny the remaining allegations in paragraph 36, and on that basis denies each and every remaining allegation in paragraph 36.

37.     ESI admits that U.S. Patent No. 5,255,309 ("the '309 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and October 19, 1993 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable.  ESI admits that the patent expired on December 20, 2005.  ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 37, and on that basis denies each and every remaining allegation in paragraph 37.

38.     ESI admits that U.S. Patent No. 5,351,285 ("the '285 patent") is entitled "Multiple Format Telephonic Interface Control System" and on its face lists Ronald A. Katz as the sole inventor and September 27, 1994 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable.  ESI admits that the patent expired on December 20, 2005.  ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 38, and on that basis denies each and every remaining allegation in paragraph 38.

39.     ESI admits that U.S. Patent No. 5,561,707 ("the '707 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and October 1, 1996 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable.  ESI admits that the patent expired on December 20, 2005.  ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 39, and on that basis denies each and every remaining allegation in paragraph 39.

40.     ESI admits that U.S. Patent No. 5,684,863 ("the '863 patent") is entitled "Telephonic Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and November 4, 1997 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 40, and on that basis denies each and every remaining allegation in paragraph 40.

41.     ESI admits that U.S. Patent No. 5,787,156 ("the '156 patent") is entitled "Telephonic Interface Lottery System" and on its face lists Ronald A. Katz as the sole inventor and July 28, 1998 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 41, and on that basis denies each and every remaining allegation in paragraph 41.

42.     ESI admits that U.S. Patent No. 5,815,551 ("the '551 patent") is entitled "Telephonic Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and September 29, 1998 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 42, and on that basis denies each and every remaining allegation in paragraph 42.

43.     ESI admits that U.S. Patent No. 5,828,734 ("the '734 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists

Ronald A. Katz as the sole inventor and October 27, 1998 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 43, and on that basis denies each and every remaining allegation in paragraph 43.

44.     ESI admits that U.S. Patent No. 5,898,762 ("the '762 patent") is entitled "Telephonic Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and April 27, 1999 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 44, and on that basis denies each and every remaining allegation in paragraph 44.

45.     ESI admits that U.S. Patent No. 5,917,893 ("the '893 patent") is entitled "Multiple Format Telephonic Interface Control System" and on its face lists Ronald A. Katz as the sole inventor and June 29, 1999 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 45, and on that basis denies each and every remaining allegation in paragraph 45.

46.     ESI admits that U.S. Patent No. 5,974,120 ("the '120 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as the sole inventor and October 26, 1999 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI lacks sufficient

information or knowledge either to admit or deny the remaining allegations in paragraph 46, and on that basis denies each and every remaining allegation in paragraph 46.

47.    ESI admits that U.S. Patent No. 6,035,021 ("the '021 patent") is entitled "Telephone-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and March 7, 2000 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable.  ESI admits that the patent expired on December 20, 2005.  ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 47, and on that basis denies each and every remaining allegation in paragraph 47.

48.    ESI admits that U.S. Patent No. 6,044,135 ("the '135 patent") is entitled "Telephone-Interface Lottery System" and on its face lists Ronald A. Katz as the sole inventor and March 28, 2000 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable.  ESI admits that the patent expired on July 10, 2005.  ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 48, and on that basis denies each and every remaining allegation in paragraph 48.

49.    ESI admits that U.S. Patent No. 6,148,065 ("the '065 patent") is entitled "Telephone-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and November 14, 2000 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable.  ESI admits that the patent expired on July 10, 2005.  ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 49, and on that basis denies each and every remaining allegation in paragraph 49.

50.     ESI admits that U.S. Patent No. 6,335,965 ("the '965 patent") is entitled "Voice-Data Telephonic Interface Control System" and on its face lists Ronald A. Katz as the sole inventor and January 1, 2002 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 50, and on that basis denies each and every remaining allegation in paragraph 50.

51.     ESI admits that U.S. Patent No. 6,349,134 ("the '134 patent") is entitled "Telephonic Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and February 19, 2002 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on December 20, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 51, and on that basis denies each and every remaining allegation in paragraph 51.

52.     ESI admits that U.S. Patent No. 6,424,703 ("the '703 patent") is entitled "Telephone-Interface Lottery System" and on its face lists Ronald A. Katz as the sole inventor and July 23, 2002 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on July 10, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 52, and on that basis denies each and every remaining allegation in paragraph 52.

53.     ESI admits that U.S. Patent No. 6,434,223 ("the '223 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists

Ronald A. Katz as the sole inventor and August 13, 2002 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on July 10, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 53, and on that basis denies each and every remaining allegation in paragraph 53.

54.     ESI admits that U.S. Patent No. 6,512,415 ("the '415 patent") is entitled "Telephone-Interface Game Control System" and on its face lists Ronald A. Katz as the sole inventor and January 28, 2003 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on July 10, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 54, and on that basis denies each and every remaining allegation in paragraph 54.

55.     ESI admits that U.S. Patent No. 6,678,360 ("the '360 patent") is entitled "Telephonic Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and January 13, 2004 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. ESI admits that the patent expired on July 10, 2005. ESI lacks sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 55, and on that basis denies each and every remaining allegation in paragraph 55.

### FIRST CLAIM
### (ALLEGED PATENT INFRINGEMENT BY AHOLD DEFENDANTS)

56.     ESI repeats and incorporates by reference its answers to the allegations contained in paragraphs 1-55 of the Complaint as if fully set forth herein.

57.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 57 of the Complaint and therefore denies such allegations.

58.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 58 of the Complaint and therefore denies such allegations.

59.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 59 of the Complaint and therefore denies such allegations.

60.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 60 of the Complaint and therefore denies such allegations.

61.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 61 of the Complaint and therefore denies such allegations.

62.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 62 of the Complaint and therefore denies such allegations.

63.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 63 of the Complaint and therefore denies such allegations.

## SECOND CLAIM
### (ALLEGED PATENT INFRINGEMENT BY EXPRESS SCRIPTS)

64.     ESI repeats and incorporates by reference its answers to the allegations contained in paragraphs 1-55 of the Complaint as if fully set forth herein.

65.     ESI admits the allegations contained in paragraph 65 of the Complaint.

66.     ESI denies the allegations contained in paragraph 66 of the Complaint.

67.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 67 of the Complaint and therefore denies such allegations.

68.     ESI denies the allegations contained in paragraph 68 of the Complaint.

69.     ESI denies the allegations contained in paragraph 69 of the Complaint.

70.    ESI denies the allegations contained in paragraph 70 of the Complaint.

71.    ESI denies the allegations contained in paragraph 71 of the Complaint.

### THIRD CLAIM
### (ALLEGED PATENT INFRINGEMENT BY RITE AID DEFENDANTS)

72.    ESI repeats and incorporates by reference its answers to the allegations contained in paragraphs 1-55 of the Complaint as if fully set forth herein.

73.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 73 of the Complaint and therefore denies such allegations.

74.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 74 of the Complaint and therefore denies such allegations.

75.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 75 of the Complaint and therefore denies such allegations.

76.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 76 of the Complaint and therefore denies such allegations.

77.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 77 of the Complaint and therefore denies such allegations.

78.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 78 of the Complaint and therefore denies such allegations.

79.    ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 79 of the Complaint and therefore denies such allegations.

### FOURTH CLAIM
### (ALLEGED PATENT INFRINGEMENT BY BROOKS ECKERD DEFENDANTS)

80.    ESI repeats and incorporates by reference its answers to the allegations contained in paragraphs 1-55 of the Complaint as if fully set forth herein.

81.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 81 of the Complaint and therefore denies such allegations.

82.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 82 of the Complaint and therefore denies such allegations.

83.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 83 of the Complaint and therefore denies such allegations.

84.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 84 of the Complaint and therefore denies such allegations.

85.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 85 of the Complaint and therefore denies such allegations.

86.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 86 of the Complaint and therefore denies such allegations.

87.     ESI lacks information sufficient to form a belief as to the allegations contained in paragraph 87 of the Complaint and therefore denies such allegations.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

88.     Katz is not entitled to any relief against ESI because ESI is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '309, '707, '551, '360, '863, '134, '150, '285, '893, '984, '252, '734, '120, '223, '156, '965, '968 and '762 patents (collectively "the Katz asserted patents").

## Second Affirmative Defense

89.    The Katz asserted patents are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

## Third Affirmative Defense

90.    The prior art known before the alleged inventions covered by the Katz asserted patents limits and restricts the scope of the Katz asserted patents so that ESI does not infringe any claims of the Katz asserted patents.

## Fourth Affirmative Defense

91.    Each of Katz's claims against ESI is barred, in whole or in part, by the doctrine of unclean hands.

## Fifth Affirmative Defense

92.    Each of Katz's claims against ESI is barred, in whole or in part, by the doctrine of waiver, laches or equitable estoppel due to Katz's unreasonable delay in bringing this suit against them.

## Sixth Affirmative Defense

93.    On the basis of the prosecution history of each of the Katz asserted patents and related patents, Katz's claims against ESI are barred, in whole or in part, by prosecution history estoppel.

## Seventh Affirmative Defense

94.    On the basis of the prosecution history of each of the Katz asserted patents and related patents, Katz's claims against ESI are barred, in whole or in part, by prosecution laches.

### Eighth Affirmative Defense

95.    Katz's claims against ESI are barred in whole or in part because Katz has engaged in patent misuse by initiating this sham litigation and by attempting to enforce the patents-in-suit in bad faith and with knowledge that at least one claim of several of the Katz asserted patents is invalid.

### Ninth Affirmative Defense

96.    Katz's claims against ESI are barred in whole or in part by express or implied license and/or by the doctrine of patent exhaustion.

### Tenth Affirmative Defense

97.    Katz's claims against ESI are barred by the statute of limitations set out in 35 U.S.C. § 286 to the extent ESI's alleged infringement occurred more than six years prior to Katz filing this action.

### Eleventh Affirmative Defense

98.    Katz's claims for damages against ESI are barred by 35 U.S.C. § 287(a) for any alleged infringement that occurred prior to Katz giving actual notice of the alleged infringement of the Katz asserted patents to ESI.

### Twelfth Affirmative Defense

99.    The Katz asserted patents are unenforceable, in whole or in part, due to the inequitable conduct by Katz, prior assignees of some of the patents-in-suit, by Ronald A. Katz, and/or by their attorneys and appointed representatives (collectively "Katz") before the United States Patent and Trademark Office during the prosecution of the patents-in-suit and/or related patents and patent applications.

100.    Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual of Patent Examination Procedure ("MPEP") § 2000.01, *et seq.* impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the PTO, which requires he or she to disclose to the PTO all information that is material to the patentability of the application under examination. Breach of this duty of candor, good faith and honesty with intent to deceive the PTO constitutes inequitable conduct so as to render the affected patents unenforceable.

101.    Upon information and belief, Katz, with the intent to deceive the PTO into issuing patent claims of a scope beyond any to which Katz was entitled, exercised a pattern and practice of conduct as part of the prosecution of the applications that ultimately led to the patents-in-suit and related applications, upon which the patents-in-suit claim priority and which also contain related and material claimed subject matter, that violated the duty of candor and good faith and honesty owed by patent applicants.

102.    Upon information and belief, on multiple occasions as part of the prosecution of the patents-in-suit and in related patents and/or applications, Katz, with an intent to deceive the PTO (i) failed to disclose material prior art known to Katz; (ii) failed to inform the PTO of inconsistent positions taken during prosecution; (iii) failed to identify and disclose material information from related litigation or proceedings; (iv) failed to inform patent examiners of adverse findings by other examiners; (v) made false claims of priority so as to avoid prior art; and (vi) engaged in a pattern of delaying disclosure of known prior art to the PTO and mischaracterizing the relevance of that prior art.    Katz's repeated and intentional violations of the duty of candor, good faith and honesty, which are set forth in detail below, render the patents-in-suit unenforceable.    The

investigation of ESI is ongoing. ESI reserves the right to seek leave to amend its Answer and Affirmative Defenses to include additional facts or bases of inequitable conduct as they become known.

103.    In addition to the patents-in-suit, the following related patents are relevant to determining the unenforceability of the patents-in-suit based on Katz's inequitable conduct: 4,845,739 ("the '739 patent"), 5,048,075 ("the '075 patent"), 5,365,575 ("the '575 patent"), 6,016,344 ("the '344 patent"), 5,224,153 ("the '153 patent"), 5,359,645 ("the '645 patent"), 5,073,929 ("the '929 patent"), 5,014,298 ("the '298 patent"), 5,218,631 ("the '631 patent"), 5,793,846 ("the '846 patent"), 5,835,576 ("the '576 patent"), 6,044,135 ("the '135 patent"), 6,148,065 ("the '065 patent"), 6,151,387 ("the '387 patent"), 6,424,703 ("the '703 patent"), and 6,512,415 ("the '415 patent"). The related applications include U.S. Patent Application Nos. 06/753/299 ("the '299 application"), 07/342,506 ("the '506 application") and 07/640,337 ("the '337 application"). The inequitable conduct committed by Katz as part of the prosecution of the above-identified patents and related patents and applications has infected the patents-in-suit, thus rendering them unenforceable due to inequitable conduct.

104.    Upon information and belief, as part of the prosecution of the patents-in-suit and related patents and applications, Katz repeatedly failed to disclose material references known to Katz with an intent to deceive the PTO, as set forth below.

### The Barger Patent

105.    Upon information and belief, Katz had knowledge of and failed to disclose U.S. Patent No. 4,071,698 to Barger, *et al*. ("the Barger patent") to the PTO as part of the prosecution of several of the patents-in-suit and related patents and/or applications.

106.    The Barger patent was filed with the PTO on January 10, 1977, eight years before the effective filing date of Katz's first patent, and is prior art to the patents-in-suit.

107.    The Barger patent is material to the patents-in-suit.  It discloses an automated interactive voice system for marketing merchandise, such as audio recordings. The customer selects and listens to an audio demonstration and may arrange payment by credit card or other means.  The system maintains a complete record of all transactions, including the number of requests for demonstrations by each customer, in order to maintain current inventory records and to determine trends.  The system can use this transaction history to determine whether a customer is a "free loader" and limits the customer's access to the system accordingly.

108.    The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains required information from the customer that is placed in a database.  When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer.  Upon completion of the demonstration, the customer is returned to a live operator, who will take the order.

109.    Many features relevant to Katz's claims are disclosed in the Barger patent. For example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.  Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the PTO in deciding whether to allow Katz's then-pending claims.

110.    Upon information and belief, Katz became aware of the Barger patent and its materiality at least as early as January 1989.  Upon information and belief, on or about

December 1988, the European Patent Office sent a search report for one of Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederic Coles. The search report identified the Barger patent as being "particularly relevant" to Katz's application.

111.    Notwithstanding Katz's knowledge of the Barger patent and of its materiality, Katz failed to disclose this material prior art to the PTO during prosecution of at least the '739, '150, '298, '929, '984, '153, '965, '252, '734 and '863 patents. Katz also failed to disclose the Barger patent to the PTO as part of the substantive prosecution of the '285 patent; instead Katz withheld the Barger patent from the PTO until after a notice of allowance had issued.

112.    Upon information and belief, Katz withheld the Barger patent with an intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled to in at least the '739, '150, '298, '929, '984, '153, '965, '252, '734, '863 and '285 patents, thereby committing inequitable conduct and rendering those patents unenforceable, all of which are patents-in-suit or patents from which the patents-in-suit claim priority, or patents related to the patents-in-suit.

113.    The inequitable conduct committed by Katz with respect to at least the '739, '150, '298, '929, '984, '153, '965, '252, '734, '863 and '285 patents taints other related patents, which claim priority to, or are related to these patents and which claim related subject matter to which the Barger patent is material, rendering these related patents unenforceable.

114.    At least the '893 and '156 patents, which are patents-in-suit, claim priority from and/or are related to and claim related subject matter to both the '150 and '285

patents to which the Barger patent is material. Accordingly, at least the '893 and '156 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz.

115.    Likewise, at least the '863, '156, '551, '734, '893, '120, '134, '223, '965, '984, '252, '285, '762, '309, '707, and '360 patents, which are patents-in-suit, all claim priority from and claim subject matter related to the '739 patent to which the Barger patent is also material. Accordingly, at least the '863, '156, '551, '734, '893, '120, '134, '223, '965, '984, '252, '285, '762, '309, '707, and '360 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the '739 patent.

### The DeBruyn Reference

116.    Upon information and belief, Katz withheld European Patent Specification No. 0032410 to DeBruyn, which corresponds with Canadian Patent No. 1162336 ("the DeBruyn patent") from the PTO during prosecution of many of its earlier patents.

117.    The DeBruyn patent was published on July 22, 1981 and disclosed an interactive voice system for implementing a lottery. The DeBruyn patent was cited in the same European search report that identified the Barger patent. The European search report also identified the DeBruyn patent as "particularly relevant."

118.    The DeBruyn patent discloses many features relevant to Katz's claims, including receiving the caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

119.    Upon information and belief, Katz was aware of the materiality, significance and relevance of the DeBruyn patent and his failure to disclose it to the PTO during prosecution of at least the '739, '252, '150, '075, '298, '929, '984, '153, '285, '734, '965, '309 and '863 patents.

120.    Upon information and belief, Katz withheld the DeBruyn patent from the PTO with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled in at least the '739, '252, '150, '075, '298, '929, '984, '153, '285, '734, '965, '309 and '863 patents, thereby committing inequitable conduct and rendering those patents unenforceable.  The '739, '252, '150, '075, '298, '929, '984, '153, '285, '734, '965, '309 and '863 patents are all patents-in-suit, patents from which the patents-in-suit claim priority, or patents related to the patents-in-suit.

121.    At least the '863, '156, '551, '734, '893, '120, '134, '223, '965, '984, '252, '285, '762, '707 and '360 patents, which are patents-in-suit, all claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material.  Accordingly, at least the '863, '156, '551, '734, '893, '120, '134, '223, '965, '984, '252, '285, '762, '707 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '739 patent.

### The Yoshizawa Reference

122.    As part of the prosecution of at least the '575, '252, '734, '309 and '965 patents, Katz failed to disclose a prior art article entitled "Voice Response System For Telephone Betting" by Yoshizawa, *et al*. ("the Yoshizawa article").  The article appeared in the 1977 issue of *Hitachi Review* magazine.

123.    The Yoshizawa article discloses an automatic off-track betting system. The system includes a voice response unit, a public telephone network and a central processing unit.  Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets, for example, a wager on a horse to "show."  The entered data is then stored in the caller's account file.  Each wager is counted against a preset daily wagering limit.  The caller is provided with a registration number referencing the transaction.  Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account.  The article specifically mentions that the system could be used for "winning lot number service", or a lottery.

124.    Many features relevant to at least the '575, '252, '734, '309 and '965 patents are disclosed in the Yoshizawa article.  For example, Yoshizawa discloses limiting access and use to a telephone-based gambling or lottery system and qualifying callers based on an account number.

125.    Upon information and belief, Katz was aware of the materiality of the Yoshizawa article at least as early as September 2, 1992, well before the issuance of the '575, '252, '734, '309 and '965 patents, when it was cited in response to interrogatories in the *First Data Resources, Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal 1991) litigation.

126.    Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality to at least the '575 patent, upon information and belief, Katz failed to disclose the reference to the PTO as part of the prosecution of at least the '575, '252, '734, '309 and '965 patents in violation of Katz's duty of candor.

127.    Upon information and belief, Katz withheld the material Yoshizawa article from the PTO as part of the prosecution of at least the '575, '252, '734, '309 and '965 patents with intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '575, '252, '734, '309 and '965 patents unenforceable.

128.    At least the '156 patent, a patent-in-suit, directly claims priority from and claims subject matter related to the '575 patent to which the Yoshizawa article was material.  Accordingly, at least the '156 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '575 patent.

129.    At least the '120, '156, '223, '360, '551, '863, '762, '707 and '893 patents are related to the '252 and '575 patents and claim subject matter to which the Yoshizawa article was material.  Accordingly, at least the '120, '156, '223, '360, '551, '863, '762, '707 and '893 patents are rendered unenforceable by inequitable conduct by Katz's failure to disclose the Yoshizawa article.

**The Florafax Reference**

130.    Upon information and belief, during prosecution of the '576, '309 and '575 patent, Katz had knowledge of and failed to disclose a brochure dated January 22, 1986 and circulated by Florafax at or around that time ("the Florafax brochure").

131.    The Florafax brochure is material to at least the '575, '309 and '576 patents.  The Florafax brochure discloses a service for providing a recorded message in association with the delivery of a floral bouquet.  After purchasing a bouquet, the sender receives a card from the florist that includes a telephone number and an ID number.  Upon calling the number indicated, the sender is prompted to enter the ID number and

record a personal message.  When the flowers are delivered, a corresponding card instructs the recipient to call a specified telephone number to hear the sender's personal message.  The message may only be played twice before it is automatically erased. The Florafax "talking bouquet" system was test marketed at least as early as December 1985, demonstrating public use of the concepts embodied in the brochure.

132.    The Florafax brochure and associated service operation disclose many of the features claimed in at least the '575, '309 and '576 patents.  Upon information and belief, Katz was aware of the materiality of the Florafax brochure at least as early as September 2, 1992, over two years before the issuance of the '575 patent, over one year before the issuance of the '309 patent and over seven years before the issuance of the '576 patent, when it was cited in response to interrogatories in the *First Data Resources, Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal 1991) litigation.

133.    Upon information and belief, notwithstanding Katz's knowledge of the Florafax brochure and its materiality, Katz failed to disclose it as part of the prosecution of at least the '576, '309 and '575 patents in violation of Katz's duty of candor.

134.    Upon information and belief, Katz intentionally withheld the Florafax brochure from the PTO as part of the prosecution of at least the '575, '309 and '576 patents with an intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '576, '309 and '575 patents unenforceable.

135.    At least the '156 patent, a patent-in-suit, claims priority from and claims subject matter related to the '575 patent to which the Florafax brochure was material.

Accordingly, at least the '156 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '575 patent.

### The Katz PCT Reference

136.    Upon information and belief, Katz failed to disclose the publication of Katz's own PCT application, WO 87100375 ("the WO '375 application") during the prosecution of the '298, '863, '156, '309 and '551 patents, which are all patents-in-suit. Upon information and belief, Katz also failed to disclose the WO '375 application as part of the prosecution of at least the related '739 and '929 patents.

137.    The WO '375 application was published on January 15, 1987.  The WO '375 application would therefore be considered prior art for any claims with a filing date more than a year after the publication date under 35 U.S.C. § 102(b).  In particular, the WO '375 application constituted prior art to all claims that incorporated any new subject matter added in these applications, including at least the '739, '929, '285, '863, '156 and '551 patents.

138.    The published WO '375 application would have been material to a PTO examiner in determining what claims, if any, Katz might be entitled to in the '285, '863, '156 and '551 patents-in-suit and the related '739 and '929 patents.  The WO '375 application would have been relevant to many of the basic elements claimed in the patents–in-suit, such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

139.    Upon information and belief, despite Katz's duty to disclose material information to the PTO, and despite Katz's personal knowledge of the WO '375

application and its materiality, Katz failed to disclose the WO '375 application to the PTO during the examination of at least the '285, '863, '156, '551, '739, '309 and '929 patents.

140.    Upon information and belief, Katz intentionally withheld the WO '375 application from the PTO during the examination of at least the '285, '863, '156, '551, '739, '309 and '929 patents with an intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '285, '863, '156, '551, '739, '309 and '929 patents unenforceable.

141.    The inequitable conduct committed by Katz in connection with the '285, '863, '156, '551, '739, '309 and '929 patents taints other related patents which claim priority from those patents and which claim related subject matter to which the WO '375 application was material, rendering these related patents unenforceable.  For example, all of the Katz asserted patents, with the exception of the '150 patent, claim priority from and claim subject matter related to the '739 patent to which the WO '375 application was material.  Accordingly, at least the '863, '156, '551, '734, '893, '120, '134, '223, '965, '984, '252, '285, '762, '707 and '360 patents are likewise rendered unenforceable due to inequitable conduct committed in the parent '739 patent.

**The Periphonics References**

142.    Upon information and belief, Katz intentionally withheld from the Patent and Trademark Office highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Katz was not entitled.

143.    Upon information and belief, in April of 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.,* CV 91-4471TJH, U.S. District Court,

Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").

144.    Upon information and belief, the Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, including those which would later issue as the Asserted Patents.

145.    Upon information and belief, included in the West materials were a number of Periphonics references, including 1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (Bates numbers W73055-W73095) and 2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (Bates numbers W73219-W73302).

146.    Upon information and belief, both the Bank-From-Home reference and VoicePac reference are highly relevant and material to many claims of the Asserted Patents.  The Bank-From-Home reference describes such limitations of claims of the Asserted Patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.  The VoicePac reference describes such limitations of claims of the Asserted Patents as interfacing callers to the system and transferring callers to a customer service representative.

147.    Upon information and belief, during the prosecution of U.S. Patent Application No. 08/306,456, which ultimately issued as the '965 patent, Katz stated: "During litigation [of the West case], a voluminous quantity of prior art, that is, some 500

items (including single or plural related documents grouped together), were identified by the defendant.  However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)."  Paper no. 3, filed November 4, 1994.  Katz also stated:  "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)."  Paper no. 3, filed November 4, 1994.

148.    Upon information and belief, Katz made the same statements in at least those applications that later issued as the '285, '893, and '707 patents.

149.    Upon information and belief, at least the applications for the '863 and '551 patents refer the examiner to the references disclosed during the prosecution of the '707 patent.

150.    Upon information and belief, while other references in the West materials were submitted to the PTO during prosecution of at least the '707, '965, '285, '893, '863, and '551 patents, the Bank-From-Home and VoicePac references were withheld despite knowledge of their materiality.

151.    Katz's failure to disclose this material prior art was a violation of the duty of candor owed to the PTO, and constitutes inequitable conduct.

152.    Due to the inequitable conduct that occurred during the prosecution of their respective applications, at least the '965, '285, '893, '863, and '551 patents are rendered unenforceable.

**The Corbett Reference**

153.    Upon information and belief, Katz had knowledge of and failed to disclose a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J.

Corbett ("the Corbett Reference") as part of the prosecution of at least the '965, '309 and '285 patents-in-suit. Upon information and belief, Katz unreasonably delayed disclosing the Corbett reference to the PTO and mischaracterized its materiality in connection with the prosecution of at least the '734, '120, '134, and the '223 patents.

154.     Upon information and belief, Katz had knowledge of the Corbett reference and its materiality at least as early as August 13, 1993 when it was disclosed in connection with the *First Data Resources Inc. v. West Interactive Corp., et al. Litigation*, Civil Action No. 91-4471-TJH, in the United States District Court for the Central District of California. Upon information and belief, First Data Resources (Katz's predecessor in interest) had knowledge of the Corbett reference in connection with West Interactive's motion for summary judgment of invalidity of the Katz patents at issue in that case.

155.     The Corbett reference is material to certain of the claimed subject matter of at least the '965, '285, '120, '134, '309 and the '223 patents. Corbett teaches use of identification to qualify access to a system (user name and password), limited use based on key numbers relating to limits on use (limiting the number of times a particular user can play a game), selectively repeating cues based on user identification, receiving entry of product identifier to check stock availability and price, and use of a single system to implement several different types of services.

156.     Because the Corbett Reference discloses many of the features claimed in the '965, '285, '120, '134, '309 and the '223 patents, it would have been material to the PTO in deciding whether to allow the claims of those patents.

157.     Upon information and belief, Katz intentionally withheld the material Corbett Reference patent from the PTO during the prosecution of at least the '965, '309

and '285 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965, '309 and '285 patents unenforceable.

158.   Upon information and belief, Katz intentionally delayed disclosing the material Corbett Reference from the PTO during the prosecution of at least the '120, '134, and the '223 patents, denying the Examiner the opportunity to consider the reference in the substantive prosecution of those patents.  Upon information and belief, Katz also mischaracterized the materiality of the Corbett Reference to the PTO.  Upon information and belief, Katz took those actions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120, '134, and the '223 patents unenforceable.

## The Moosemiller Reference

159.   Upon information and belief, Katz had knowledge of and failed to disclose a reference entitled "AT&T's Conversant I Voice System" as part of the prosecution of at least the '965 and '734 patents-in-suit with an intent to deceive the PTO.

160.   "AT&T's Conversant I Voice System," by John P. Moosemiller ("the Moosemiller Reference"), was published in the March/April 1986 issue of "Speech Technology."  Upon information and belief, Katz had knowledge of the Moosemiller Reference at least as early as July 21, 1998 in connection with a lawsuit brought by Katz and MCI Telecommunications Corp. against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 97-CV-4453), in which Katz asserted that AT&T infringed certain patents owned by Katz.

161.    The Moosemiller Reference was material to certain of the claimed subject matter in at least the '965 and '734 patents.  Moosemiller disclosed use of DNIS to allow advance classification of incoming calls for different applications which are greeted by appropriate transaction prompts, system use in conjunction with ACD/PBX, qualification based on user identification input, bridging to an attendant for help, or completing a partially automated transaction, and application of IVR technology to several areas including financial services, credit authorization, wholesale and retail distribution, sales order entry, direct marketing, transportation scheduling and dispatching, college registration, communication services.

162.    Because the Moosemiller Reference discloses many of the features claimed in the '965 and '734 patents, it would have been material to the PTO in deciding whether to allow the claims of those patents.

163.    Upon information and belief, Katz intentionally withheld the material Moosemiller Reference patent from the PTO during the prosecution of at least the '965 and '734 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 and '734 patents unenforceable.

**The Daudelin '995 patent**

164.    Upon information and belief, Katz had knowledge of and failed to disclose U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") as part of the prosecution of at least the '120 patent-in-suit.

165.    The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent.  The Daudelin

'995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products. Callers are provided product information and can place orders, using automated voice response systems, human operators, or combinations thereof. Callers are qualified based in part on their calling party number, and the particular product they selected.

166.    Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the PTO in deciding whether to allow the claims of the '120 patent. For example, the '120 patent claims receiving calls in a toll free mode, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

167.    Upon information and belief, Katz was aware of the Daudelin '995 patent, having cited it to the PTO more than two years prior to the issuance of the '120 patent. Upon information and belief, Katz listed the Daudelin '995 patent in previous IDS submissions during the prosecution of Katz's patents, although Katz had misspelled the name as "Dandelin."

168.    Upon information and belief, Katz intentionally withheld the material Daudelin '995 patent from the PTO during the prosecution of at least the '120 patent with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

169.    The inequitable conduct committed by Katz with respect to the '120 patent taints other related patents, which claim priority to '120 patent and which claim related

subject matter to which the Daudelin '995 patent is material, rendering these related patents unenforceable.

170.    At least, the '223 patent-in-suit claims priority to the '120 patent and claims subject matter related to the '120 patent to which the Daudelin '995 patent is material. Indeed, at least the '223 and '120 patents share a common specification and related claimed subject matter.  Accordingly, at least the '223 patent is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '120 patent.

171.    Accordingly, at least the '120 and '223 patents-in-suit are rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Daudelin '995 patent to the PTO.

### Katz's Intentional Failure to Inform the PTO of Inconsistent Positions Taken During Prosecution Regarding the Daudelin Patent

172.    At least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively ("the Daudelin patents"), were cited during the prosecution of certain of Katz patents-in-suit and related patents.  The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

173.    Upon information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the patents-in-suit and failed to inform the different patent examiners of Katz's inconsistent positions.

174.    For example, as part of the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent as not disclosing "DNIS or like function".

175.    Whereas, contrary to the position Katz took as part of the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent, as part of the prosecution of the '551 patent, as disclosing "DNIS or like function".

176.    Likewise, during the prosecution of the '893 patent, Katz characterized the '910 Daudelin patent as disclosing "DNIS or like function".

177.    Subsequently, however, contrary to the positions taken as part of the prosecution of the '551 and '893 patents, Katz took the position as part of the prosecution of the '360 patent that "Daudelin does not teach DNIS."

178.    Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551, '734, '893 and '360 patents-in-suit unenforceable.

179.    At least, the '120 and '223 patents, which are patents-in-suit, all claim priority to one or more of the '551, '734, '893 and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material.  Accordingly, at least the '120 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734, '893 and '360 patents.

180.    Accordingly, at least the '551, '734, '893, '120, '223, and '360 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

### Katz's Intentional Failure to Inform the PTO of Inconsistent Positions Taken During Prosecution Regarding the Riskin Patent

181.    Upon information and belief, Katz also failed to inform the PTO of inconsistent positions that Katz took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

182.    As part of the prosecution of the '075 patent, Katz stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish routing. . . ."

183.    Contrary to Katz's characterization of the Riskin patent in the '075 patent, Katz maintained as part of the prosecution of the '120 patent-in-suit that the Riskin patent disclosed aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

184.    By taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions, and having the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, Katz committed inequitable conduct, thereby rendering at least the '075 and '120 patents unenforceable.

185.    At least, the '156 and '223 patents, which are patents-in-suit, all claim priority to one or more of the '075 and '120 patents and claim subject matter related to

these patent to which the Riskin patent is material. Accordingly, at least the '156 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '075 and '120 patents.

186.    Accordingly, at least the '156, '120, and '223 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

### Katz's Intentional Failure to Identify or Disclose Material Information From Related Litigations or Proceedings

187.    Pursuant to MPEP § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the PTO has a duty to bring to the attention of the PTO "the existence of such litigation and any other material information arising therefrom."

188.    Upon information and belief, as set forth below, as part of the prosecution of several of the patents-in-suit, Katz failed to identify or disclose material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

### Katz's Failure to disclose the West Interactive Corp. v.
### First Data Resources, Inc. Litigation.

189.    On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska.  West alleged, *inter alia,* that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent") are invalid on several grounds including prior use and prior art.

190.    West's allegations in that suit are material to at least the '285, '863, '156, '551, '734, '893, '120, '965, '134, '223, '252, '984, '762, '309, '707 and '360 patents-in-suit, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

191.    Upon information and belief, Katz was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation during the prosecution of these patents-in-suit.

192.    Nonetheless, upon information and belief, Katz failed to disclose the existence of the *West Interactive Corp. v. First Data Resources, Inc.* litigation and of the subject matter of West's allegations to the PTO as part of the prosecution of at least the '285, '863, '156, '551, '734, '893, '120, '965, '134, '223, '252, '984, '762, '309, '707 and '360 patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Katz's Failure to Disclose the *First Data Resources, Inc. v.***
***900 Million, Inc., et al.* Litigation.**

193.     On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

194.     The defendants in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents.

195.     The defendants' counterclaims in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation are material to at least the '285, '863, '156, '551, '734, '893, '120, '965, '134, '223, '252, '984, '762, '309, '707 and '360 patents-in-suit, all of which claim priority to at least the '739 patent.

196.     Upon information and belief, Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation during the prosecution of these patents-in-suit.

197.     Nonetheless, upon information and belief, Katz failed to disclose the existence of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation and the subject matter of the defendants' allegations to the PTO as part of the prosecution of at least the '285, '863, '156, '551, '734, '893, '120, '965, '134, '223, '252, '984, '762, '309, '707 and '360 patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

### Katz's Failure to Disclose the First Data Resources Inc. v.
### West Interactive Corp., et al. Litigation

198.    On August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH, against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '298 patents.

199.    The defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation filed a counterclaim alleging, *inter alia,* the invalidity and unenforceability of the '739, '298 and '150 patents.

200.    The defendants' allegations in that suit are material to at least the '285, '863, '551, '734, '576, '893, '120, '762, '309, '707 and '134 patents-in-suit, all of which claim priority to at least the '739 patent.

201.    Upon information and belief, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation during the prosecution of these patents-in-suit.

202.    Nonetheless, upon information and belief, as part of the prosecution of at least the '863, '551, '734, '576, '893, '120, '762, '309, '707 and '134 patents-in-suit, Katz failed to disclose to the PTO the existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Katz's Failure to Disclose the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* Litigation.**

203.    On February 9, 1999, Katz filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '285, '863 and '734 patents and U.S. Patent Nos. 5,259,023 ("the '023 patent") and 5,561,707 ("the '707 patent").

204.    In response to Katz's Complaint, the defendants in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, *inter alia,* that the '739, '153, '252, '023, '285, '707, '863 and '734 patents are invalid and/or unenforceable.

205.    The defendant's allegations in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation are material to at least the '965, '762 and '134 patents-in-suit, which are related patents to the patents at issue in that suit.

206.    Upon information and belief, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation during the prosecution of these patents-in-suit.

207.    Nonetheless, upon information and belief, as part of the prosecution of at least the '965, '762 and '134 patents-in-suit, Katz intentionally failed to disclose to the PTO of the existence of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation (or in the case of the '134 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the PTO into

issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

### Katz's Failure to Disclose the Ronald A. Katz Technology Licensing, L.P., et al. v. AT&T Corp., et al. Litigation

208.    On July 8, 1997, Katz and MCI Telecommunications Corp. brought suit, Civil Action No. 97-CV-4453, against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707 and '863 patents and U.S. Patent No. 5,349,633 ("the '633 patent").

209.    In reply, AT&T Corp. asserted, *inter alia,* that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents are invalid.

210.    AT&T Corp.'s allegations in the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.* litigation are material to at least the '762, '893, '762 and '120 patents-in-suit, which are related to and claim related subject matter to the patents involved in that litigation.

211.    Upon information and belief, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.* litigation during the prosecution of the '762, '893, , '762 and '120 patents-in-suit.

212.    Nonetheless, upon information and belief, Katz failed to disclose the existence of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.,* litigation and of the subject matter of AT&T Corp.'s allegations to the PTO as part of the prosecution of at least the '762, '893, '762 and '120 patents-in-suit with the intent to

deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

### Katz's Failure To Disclose Patent Interference No. 103,697

213.    Patent Interference No. 103,697 was declared on February 13, 1996, and was finalized by November 20, 1996.  One conclusion of the Board of Patent Appeals and Interferences in that patent inference was that the '968 patent specification did not provide written support for certain limitations claimed by Katz, which included transferring calls to an operator in certain circumstances.

214.    The Board of Patent Appeals and Interferences' conclusion that the '968 patent lacked written support for certain alleged limitations would have been material to the patent examiners of the '863, '156, '965, '734, '762, '893, '120, and '134 patents-in-suit, for purposes of, for example, establishing the effective date of a claim for purposes of analyzing prior art.  Indeed, upon information and belief, all of these patents-in-suit claim priority to the '968 patent, and many of them, including at least the '863, '156, '551, and the '134 patents, are disclaimed with respect to the '968 patent.

215.    Nonetheless, upon information and belief, Katz intentionally failed to disclose the existence of Patent Interference No. 103,697 and the Board of Patent Appeals and Interferences' findings to the patent examiners of at least the '863, '156, '965, '734, '762, '893, '120, and '134 patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Katz's Failure to Disclose Adverse Findings From Appeal Rulings**

216.     Upon information and belief, Katz failed to inform the patent examiners of certain of the patents-in-suit of the existence and outcome of certain Appeal Rulings of related patents that were adverse or contrary to positions Katz took during the prosecution of the patents-in-suit.

217.     For example, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger patent, which is prior art to the patents-in-suit, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

218.     The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '156, '734, '762, '893, '120, '965, and '134 and patents with respect to any claims reciting a multiple format limitation.

219.     Nonetheless, upon information and belief, Katz intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '156, '734, '762, '893, '120, '965, and '134 patents unenforceable.

220.     The inequitable conduct committed by Katz with respect to the '156, '734, '762, '893, '120, '965, and '134 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger

patent would have been material, thereby, rendering these related patents, including at least the '223 and '360 patents unenforceable.

### Katz's False Claims of Priority Made To Avoid the Prior Art

221.   Upon information and belief, during the prosecution of several patents-in-suit, Katz made false claims of priority to earlier applications with the intent to avoid prior art, as set forth below.

222.   For example, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz made the false claim that "the international application [87/00375] is not properly a reference against the present case." This assertion is false, since international application [87/00375], *i.e.,* the WO '375 application, was published more than one year prior to the filing of the '734 patent, and therefore, is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '984 patent, in order to antedate the WO '375 application.

223.   Likewise, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,792,461 to ("the Brown patent") to the PTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12. In fact, the relevant pending application's claims did not predate Brown because in the '150 patent there is no suggestion of multiple call modes, as claimed in the '734 patent. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.

224.    Similarly, upon information and belief, during prosecution of the '734 patent, Katz used the same approach to mislead the patent examiner in order to antedate a prior art reference by Hester. Katz stated "the reference by Hester bears a date of 1985, apparently 'September'. In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985." The parent application Katz referenced, however, does not disclose toll free calls nor 900 "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such limitations is entitled to claim priority to that parent application's filing date. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Hester reference.

225.    Likewise, upon information and belief, during prosecution of the '734 patent, Katz mischaracterized his pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987. Specifically, Katz stated "the present application is entitled to a priority date earlier than that of the subject reference." Upon information and belief, Katz's statement was false at the time it was made since there were claims in Katz's application (such as then pending claim 17) which contained and claimed new subject matter, and were, therefore, not entitled to an earlier priority date.    Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

226.    Upon information and belief, in violation of the duty of good faith and candor, Katz made the above-identified false claims to priority in order to avoid the prior art and to deceive the PTO into issuing patent claims of a scope beyond which Katz was

entitled, thereby committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

227.    In addition, the inequitable conduct committed by Katz with respect to the '984 and '734 patents taints other related patents, namely the '120 and '223 patents-in-suit, which claim priority to these patents and which claim related subject matter to which the prior an patents are material, rendering these related patents unenforceable.

228.    As set forth above, Katz engaged in a pattern and practice of inequitable conduct throughout the prosecution of the patents-in-suit and/or other related patents that infected, either directly or indirectly, all of the patents-in-suit, thereby rendering them unenforceable for inequitable conduct.

## PRAYER FOR RELIEF

WHEREFORE, ESI respectfully prays for relief as follows:

A.    That Katz take nothing;

B.    That the claims of the patents-in-suit be declared to be invalid, void, unenforceable and not infringed by ESI;

C.    That ESI be awarded costs incurred by it in connection with this action;

D.    That this case be deemed exceptional pursuant to 35 U.S.C. § 285, such that ESI be awarded its reasonable attorneys' fees;

E.    That ESI be awarded such other relief as the Court may deem just and proper.

## JURY DEMAND

ESI demands a trial by jury.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant Express Scripts, Inc.*

*Of Counsel:*

James J. Brosnahan
Charles S. Barquist
Brian F. McMahon
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California 90013

Dated: November 8, 2006
174977.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of November, 2006, the attached **ANSWER OF**

**DEFENDANT EXPRESS SCRIPTS, INC.** was served upon the below-named counsel of

record at the addresses and in the manner indicated:

Mary B. Graham, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Robert T. Haslam, Esquire                                  VIA FEDERAL EXPRESS
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA  94025-3506

Michael K. Plimack, Esquire                                VIA FEDERAL EXPRESS
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104-2878

Frederick L. Cottrell, Esquire                             HAND DELIVERY
Richards Layton & Finger
One Rodney Square
920 North King Street
P.O. Box 551
Wilmington, DE  19899

Robert Lee, Esquire                                        VIA FEDERAL EXPRESS
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

174031.1