IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P. | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 06-545 (GMS) |
| v. | ) ) | |
| AHOLD U.S.A., INC., et al. | ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## THE AHOLD DEFENDANTS' ANSWER, DEFENSES AND COUNTERCLAIMS TO PLAINTIFF RONALD A. KATZ'S TECHNOLOGY LICENSING, L.P.'S AMENDED COMPLAINT FOR PATENT INFRINGMENT

Defendants Ahold U.S.A., Inc., The Stop & Shop Supermarket Company LLC, Giant

Food Stores, LLC, Giant Food LLC, and Giant Food Inc. (collectively "Ahold" or "the Ahold

Defendants") hereby set forth their Answer, Defenses, and Counterclaims to Plaintiff Ronald A.

Katz's Technology Licensing, L.P.'s ("RAKTL" or "Plaintiff") Amended Complaint For Patent

Infringement ("Amended Complaint").

### AHOLD'S ANSWER

Responding to the individually enumerated paragraphs of the Amended Complaint,

Ahold states as follows:

#### The Parties

1.  Ahold is without knowledge or information to form a belief as to the truth of the

averments of Paragraph 1 of the Amended Complaint, and on that basis denies them.

2.  Ahold admits the averments of Paragraph 2 of the Amended Complaint.

3.  Ahold admits the averments of Paragraph 3 of the Amended Complaint

4.  Ahold admits the averments of Paragraph 4 of the Amended Complaint.

5.      Ahold admits the averments of Paragraph 5 of the Amended Complaint, but notes that Giant Food LLC has its principle place of business at 6300 Sheriff Road, Landover, Maryland 20785.

6.      Ahold admits the averments of Paragraph 6 of the Amended Complaint, but notes that Giant of Maryland LLC, successor to Giant Foods Inc., has its principle place of business at 6300 Sheriff Road, Landover, Maryland 20785.

7.      The averments of Paragraph 7 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

8.      The averments of Paragraph 8 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

9.      The averments of Paragraph 9 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

10.     The averments of Paragraph 10 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

11.     The averments of Paragraph 11 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

- 2 -

12.    The averments of Paragraph 12 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

13.    The averments of Paragraph 13 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

14.    The averments of Paragraph 14 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

### Jurisdiction And Venue

15.    Ahold admits that Paragraph 15 of the Amended Complaint purports to bring an action for patent infringement arising under the Patent Laws of the United States, but Ahold denies that Plaintiff has any viable claim thereunder.  Ahold admits that this Court has jurisdiction over the subject matter of the Amended Complaint, but denies the legal sufficiency of Plaintiff's claims and allegations.  Except as expressly admitted, Ahold denies the averments of Paragraph 15.

16.    Ahold admits that it is subject to personal jurisdiction is this district, but denies the legal sufficiency of Plaintiff's claims and allegations.  Ahold expressly denies that it operates any "infringing automated call processing systems."

17.    The averments of Paragraph 17 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

- 3 -

18.     The averments of Paragraph 18 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

19.     The averments of Paragraph 19 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

20.     Ahold admits that venue is proper in this judicial district, but denies the legal sufficiency of Plaintiff's claims and allegations.  Ahold is without knowledge or information to form a belief as to whether Defendants, other than Ahold, are incorporated, reside, have a designated registered agent in, and/or are engaged in significant business activities in this district.

## Background Facts

21.     Ahold admits that Ronald A. Katz is the named inventor of each of the patents asserted against Ahold.  Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 21 of the Amended Complaint, and on that basis denies them.

22.     Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 22 of the Amended Complaint, and on that basis denies them.

23.     Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 23 of the Amended Complaint, and on that basis denies them.

24.     Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 24 of the Amended Complaint, and on that basis denies them.

25.     Ahold admits that more than fifty U.S. patents, including each of the patents asserted against Ahold, have issued naming Katz as inventor and that the first of such patents

- 4 -

asserted against Ahold issued on December 20, 1988. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 25 of the Amended Complaint, and on that basis denies them.

26.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 26 of the Amended Complaint, and on that basis denies them.

27.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 27 of the Amended Complaint, and on that basis denies them.

28.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 28 of the Amended Complaint, and on that basis denies them.

29.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 29 of the Amended Complaint, and on that basis denies them.

30.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 30 of the Amended Complaint, and on that basis denies them.

31.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 31 of the Amended Complaint, and on that basis denies them.

32.    Ahold denies that it employs any "inventions" claimed in any of the patents asserted against Ahold and further denies that any claim of the patents asserted against Ahold is valid or enforceable. Ahold admits that it has not taken a direct license to any of the patents asserted against Ahold from Ronald A. Katz Technology Licensing or its licensing arm A2D, L.P., but denies that any such license is warranted or necessary because Ahold does not infringe any valid, enforceable claim of any of the patents asserted against Ahold. Ahold denies that Ronald A. Katz Technology Licensing or its licensing arm A2D, L.P., has engaged Ahold in

meaningful license negotiations.  Except as expressly admitted, Ahold denies the averments in Paragraph 32 of the Amended Complaint.

### The Patents Asserted Against Ahold

33.     Ahold admits that U.S. Patent No. 4,792,968 ("the '968 patent") is entitled "Statistical Analysis System For Use With Public Communication Facility" and on its face lists Ronald A. Katz as sole inventor and December 20, 1988 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 33 of the Amended Complaint.

34.     Ahold admits that U.S. Patent No. 4,930,150 ("the '150 patent") is entitled "Telephonic Interface Control System" and on its face lists Ronald A. Katz as sole inventor and May 29, 1990 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable.  Except as expressly admitted, Ahold denies the averments in Paragraph 34 of the Amended Complaint.

35.     Ahold admits that U.S. Patent No. 5,128,984 ("the '984 patent") is entitled "Telephonic Interface Call Processing System with Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and July 7, 1992 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable.   Except as expressly admitted, Ahold denies the averments in Paragraph 35 of the Amended Complaint.

36.     The averments of Paragraph 36 do not apply to Ahold.  Nonetheless, Ahold admits that U.S. Patent No. 5,251,252 ("the '252 patent") is entitled "Telephonic Interface Call Processing System with Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as the issue date.  Ahold is without knowledge or information to form a

- 6 -

belief as to the truth of the remaining averments in Paragraph 36 of the Amended Complaint, and on that basis denies them.

37.     Ahold admits that U.S. Patent No. 5,255,309 ("the '309 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and October 19, 1993 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 37 of the Amended Complaint.

38.     Ahold admits that U.S. Patent No. 5,351,285 ("the '285 patent") is entitled "Multiple Format Telephonic Interface Control System" and on its face lists Ronald A. Katz as sole inventor and September 27, 1994 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 38 of the Amended Complaint.

39.     Ahold admits that U.S. Patent No. 5,561,707 ("the '707 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and October 1, 1996 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 39 of the Amended Complaint.

40.     Ahold admits that U.S. Patent No. 5,684,863 ("the '863 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and November 4, 1997 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 40 of the Amended Complaint.

- 7 -

41.     Ahold admits that U.S. Patent No. 5,787,156 ("the '156 patent") is entitled "Telephonic-Interface Lottery System" and on its face lists Ronald A. Katz as sole inventor and July 28, 1998 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 41 of the Amended Complaint.

42.     Ahold admits that U.S. Patent No. 5,815,551 ("the '551 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and September 29, 1998 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 42 of the Amended Complaint.

43.     Ahold admits that U.S. Patent No. 5,828,734 ("the '734 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and October 27, 1998 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 43 of the Amended Complaint.

44.     The averments of Paragraph 44 do not apply to Ahold. Nonetheless, Ahold admits that U.S. Patent No. 5,898,762 ("the '762 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and April 27, 1999 as the issue date, and that said patent has expired. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 44 of the Amended Complaint, and on that basis denies them.

45.     The averments of Paragraph 45 do not apply to Ahold. Nonetheless, Ahold admits that U.S. Patent No. 5,917,893 ("the '893 patent") is entitled "Multiple Format

- 8 -

Telephonic Interface Control System" and on its face lists Ronald A. Katz as sole inventor and June 29, 1999 as the issue date, and that said patent has expired. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 45 of the Amended Complaint, and on that basis denies them.

46.      Ahold admits that U.S. Patent No. 5,974,120 ("the '120 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and October 26, 1999 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 46 of the Amended Complaint.

47.      The averments of Paragraph 47 do not apply to Ahold. Nonetheless, Ahold admits that U.S. Patent No. 6,035,021 ("the '021 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as the issue date. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 47 of the Amended Complaint, and on that basis denies them.

48.      The averments of Paragraph 48 do not apply to Ahold. Nonethless, Ahold admits that U.S. Patent No. 6,044,135 ("the '135 patent") is entitled "Telephonic-Interface Lottery System" and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as the issue date. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 48 of the Amended Complaint, and on that basis denies them.

49.      The averments of Paragraph 49 do not apply to Ahold. Nonetheless, Ahold admits that U.S. Patent No. 6,148,065 ("the '065 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as

- 9 -

the issue date. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 49 of the Amended Complaint, and on that basis denies them.

50.    Ahold admits that U.S. Patent No. 6,335,965 ("the '965 patent") is entitled "Voice-Data Telephonic Interface Control System" and on its face lists Ronald A. Katz as sole inventor and January 1, 2002 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent is valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 50 of the Amended Complaint.

51.    The averments of Paragraph 51 do not apply to Ahold. Nonethless, Ahold admits that U.S. Patent No. 6,349,134 ("the '134 patent") is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and February 19, 2002 as the issue date, and that said patent has expired. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 51 of the Amended Complaint, and on that basis denies them.

52.    The averments of Paragraph 52 do not apply to Ahold. Nonethless, Ahold admits that U.S. Patent No. 6,424,703 ("the '703 patent") is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as sole inventor and July 23, 2002 as the issue date, and that said patent has expired. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 52 of the Amended Complaint, and on that basis denies them.

53.    Ahold admits that U.S. Patent No. 6,434,223 ("the '223 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and August 13, 2002 as the issue date, and that said patent has expired,

RLF1-3079971-1

but, for the reasons set forth below, denies that the patent was valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 53 of the Amended Complaint.

54. The averments of Paragraph 54 do not apply to Ahold. Nonethless, Ahold admits that U.S. Patent No. 6,512,415 ("the '415 patent") is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as sole inventor and January 28, 2003, as the issue date, and that said patent has expired. Ahold is without knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 54 of the Amended Complaint, and on that basis denies them.

55. Ahold admits that U.S. Patent No. 6,678,360 ("the '360 patent") is entitled "Telephonic Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and January 13, 2004 as the issue date, and that said patent has expired, but, for the reasons set forth below, denies that the patent was valid or enforceable. Except as expressly admitted, Ahold denies the averments in Paragraph 55 of the Amended Complaint.

### First Claim

56. Ahold repeats and incorporates its answers to the averments of Paragraphs 1-55 of the Amended Complaint as though set forth herein in full.

57. Ahold admits that it has operated or operates supermarkets and pharmacies in the Eastern United States. Except as expressly admitted, Ahold denies the averments of Paragraph 57.

58. Ahold admits that it uses a telephone system to offer customers access to pharmacy information and various pharmacy functions; however, Ahold denies that these systems infringe upon any valid, enforceable claim of any of the patents asserted against Ahold. Ahold is without sufficient knowledge and/or information to form a belief of the averments

- 11 -

regarding "call processing systems" or an "automated system," and on that basis denies them. Except as expressly admitted, Ahold denies the averments in Paragraph 58.

59.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 59 of the Amended Complaint, and on that basis denies them.

60.    Ahold denies the averments in Paragraph 60 of the Amended Complaint.

61.    Ahold denies the averments in Paragraph 61 of the Amended Complaint.

62.    Ahold denies the averments in Paragraph 62 of the Amended Complaint.

63.    Ahold denies the averments in Paragraph 63 of the Amended Complaint.

### Second Claim

64.    Ahold repeats and incorporates its answers to the averments of Paragraphs 1-63 of the Amended Complaint as though set forth herein in full.

65.    The averments of Paragraph 65 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

66.    The averments of Paragraph 66 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

67.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 67 of the Amended Complaint, and on that basis denies them.

68.    The averments of Paragraph 68 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

- 12 -

69.     The averments of Paragraph 69 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

70.     The averments of Paragraph 70 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

71.     The averments of Paragraph 71 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

## Third Claim

72.     Ahold repeats and incorporates its answers to the averments of Paragraphs 1-71 of the Amended Complaint as though set forth herein in full.

73.     The averments of Paragraph 73 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

74.     The averments of Paragraph 74 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

75.     Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 75 of the Amended Complaint, and on that basis denies them.

76.     The averments of Paragraph 76 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

77.    The averments of Paragraph 77 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

78.    The averments of Paragraph 78 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

79.    The averments of Paragraph 79 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

### Fourth Claim

80.    Ahold repeats and incorporates its answers to the averments of Paragraphs 1-79 of the Amended Complaint as though set forth herein in full.

81.    The averments of Paragraph 81 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

82.    The averments of Paragraph 82 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

83.    Ahold is without knowledge or information to form a belief as to the truth of the averments in Paragraph 83 of the Amended Complaint, and on that basis denies them.

84.    The averments of Paragraph 84 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

85.     The averments of Paragraph 85 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

86.     The averments of Paragraph 86 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

87.     The averments of Paragraph 87 of the Amended Complaint do not apply to Ahold; further, Ahold is without knowledge or information to form a belief as to the truth of said averments, and on that basis denies them.

## GENERAL DENIAL

Except as expressly admitted, Ahold denies each and every averment contained in Paragraphs 1 through 87 of the Amended Complaint.

## AHOLD'S AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Ahold asserts the following affirmative defenses to Plaintiff's Amended Complaint.

### First Defense

Ahold does not infringe any claim of the patents asserted against Ahold directly, by inducement or by contribution.

### Second Defense

The claims of the patents asserted against Ahold are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, *et. seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

### Third Defense

One or more of the patents asserted against Ahold are unenforceable due to inequitable conduct by RAKTL, Ronald A. Katz and/or their agents and attorneys before the United States Patent and Trademark Office as part of the prosecution of the patents asserted against Ahold as described with particularity in the averments of Count III of Ahold's Counterclaims below, which averments are realleged and reincorporated here by reference as though set forth in full.

### Fourth Defense

The patents asserted against Ahold are unenforceable by the doctrine of prosecution laches due to the unreasonable delay in seeking issuance of the patents asserted against Ahold.

### Fifth Defense

The claims against Ahold are barred, in whole or in part, by the doctrines of laches, waiver and/or estoppel due to RAKTL's unreasonable delay in asserting the patents asserted against Ahold.

### Sixth Defense

The claims against Ahold are barred, at least in part, pursuant to 35 U.S.C. § 286 for all events occurring more than six years prior to RAKTL's filing of this Amended Complaint.

### Seventh Defense

RAKTL is barred from recovering damages from Ahold for infringement of the patents asserted against Ahold, if any, until the date RAKTL provided proper notice to Ahold pursuant to 35 U.S.C. § 287(a).

### Eighth Defense

The claims against Ahold are barred, in whole or in part, by the doctrine of unclean hands.

## Ninth Defense

RAKTL's claims are barred in whole or in part because RAKTL has engaged in patent misuse by initiating this sham litigation and trying to enforce the patents asserted against Ahold in bad faith.

## Tenth Defense

Prosecution history estoppel applies to preclude RAKTL from maintaining that any claim of the patents asserted against Ahold covers, either literally or under the doctrine of equivalents, any of the accused systems operated by Ahold.

## Reservation of Rights

Ahold reserves the right to add any additional defenses or counterclaims that discovery may reveal.

## Request For Relief

Except as specifically admitted, Ahold denies each and every averment contained in Paragraphs 1 through 87 of the Amended Complaint and denies that Plaintiff is entitled to any of the relief requested in its Prayer for Relief. Ahold respectfully requests that the Court enter judgment in its favor and against RAKTL on all of RAKTL's claims; that the Court find this case exceptional and award Ahold its costs and attorneys' fees pursuant to 35 U.S.C. § 285; and that the Court award such other further relief as the Court deems appropriate.

## AHOLD'S COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Ahold U.S.A., Inc., The Stop & Shop Supermarket Company LLC, Giant Food Stores, LLC, Giant Food LLC, and Giant Food Inc. (collectively "Ahold") hereby assert the following counterclaims against Ronald A. Katz Technology Licensing, L.P. ("RAKTL") and aver as follows:

- 17 -

## Nature and Basis of Action

1.      This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United States Patent Act, 35 U.S.C. § 1 *et seq.* Ahold requests declarations that: (i) it does not infringe any valid, enforceable claim of U.S. Patent Nos. 4,792,968 ("the '968 patent"), 4,930,150 ("the '150 patent"), 5,128,984 ("the '984 patent"), 5,255,309 ("the '309 patent"), 5,351,285 ("the '285 patent"), 5,561,707 ("the '707 patent"), 5,684,863 ("the '863 patent"), 5,787,156 ("the '156 patent"), 5,815,551 ("the '551 patent"), 5,828,734 ("the '734 patent"), 5,974,120 ("the '120 patent"), 6,335,965 ("the '965 patent"), 6,434,223 ("the '223 patent"), and 6,678,360 ("the '360 patent"), (collectively "the patents asserted against Ahold"); (ii) the patents asserted against Ahold are invalid; and (iii) the patents asserted against Ahold are unenforceable.

## The Parties, Jurisdiction and Venue

2.      Ahold U.S.A., Inc. is a corporation organized under the laws of the State of Maryland, having offices at 1385 Hancock Street, Quincy Center Plaza, Quincy, Massachusetts 02169.

3.      The Stop & Shop Supermarket Company LLC is a Delaware limited liability company having offices at 1385 Hancock Street, Quincy Center Plaza, Quincy, Massachusetts 02169.

4.      Giant Food Stores, LLC is a Delaware limited liability company having offices at 1149 Harrisburg Pike, Carlisle, Pennsylvania 17013.

5.      Giant Food LLC is a Maryland limited liability company having offices at 6300 Sheriff Road, Landover, Maryland 20785.

6.      Giant of Maryland LLC, successor to Giant Foods Inc., is a Maryland limited liability company having offices at 6300 Sheriff Road, Landover, Maryland 20785.

- 18 -

7.    According to RAKTL's Amended Complaint, RAKTL is a limited partnership organized under the laws of the State of California, having a principal place of business at 9220 Sunset Boulevard #315, Los Angeles, California 90069.

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

9.    This Court has personal jurisdiction over RAKTL by virtue of the fact that RAKTL has submitted to the jurisdiction of this Court by bringing the instant action.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

### Factual Allegations Common to All Counts

11.    Upon information and belief, RAKTL purports to be the owner by assignment of each of the patents asserted against Ahold.

12.    RAKTL has asserted that Ahold has directly and contributorily infringed and induced others to infringe one or more claims of each of the patents asserted against Ahold.

13.    Ahold has not and does not infringe directly, by inducement or by contribution, any valid and enforceable claim of the patents asserted against Ahold.

14.    Upon information and belief, all claims of the patents asserted against Ahold are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, *et. seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

15.    Upon information and belief, the patents asserted against Ahold are unenforceable by the doctrine of prosecution laches due to the unreasonable delay in seeking issuance of the patents asserted against Ahold.

16.    Upon information and belief, the patents asserted against Ahold are also unenforceable due to the pattern and practice of inequitable conduct committed by RAKTL,

- 19 -

Ronald A. Katz and/or their agents or attorneys (collectively "Katz") before the United States Patent and Trademark Office ("USPTO") as part of the prosecution of the patents asserted against Ahold and/or related patents and patent applications thereto as described in Count III of Ahold's Counterclaims below.

## Count I

### Declaratory Judgment Regarding Non-Infringement of the Patents Asserted Against Ahold

17. Ahold realleges and incorporates the averments of Paragraphs 1 through 16, inclusive, of its Counterclaims as though set forth herein in full.

18. There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1, *et seq.* concerning Ahold's non-infringement of the claims of the patents asserted against Ahold.

19. Ahold is entitled to a judicial declaration that it has not and does not infringe directly, by inducement or by contribution, any valid, enforceable claim of the patents asserted against Ahold.

## Count II

### Declaratory Judgment Regarding Invalidity of the Patents Asserted Against Ahold

20. Ahold realleges and incorporates the averments of Paragraphs 1 through 19, inclusive, of its Counterclaims as though set forth herein in full.

21. There is an actual and justiciable controversy between the parties concerning the invalidity of the patents asserted against Ahold for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, *et. seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

22. Ahold is entitled to a judicial declaration and order that the patents asserted against Ahold are invalid.

- 20 -

## Count III

### Declaratory Judgment Regarding Unenforceability of
### the Patents Asserted Against Ahold

23.     Ahold realleges and incorporates the averments of Paragraphs 1 through 23 inclusive, of its Counterclaims as if set forth herein in full.

24.     There is an actual and justiciable controversy between the parties concerning the unenforceability of the patents asserted against Ahold.

25.     Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual for Patent Examination Procedure ("MPEP") § 2000.01, *et seq.* impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the USPTO, which requires he or she to disclose to the USPTO all information that is material to the patentability of the application under examination. Breach of this duty of candor, good faith and honesty with an intent to deceive the USPTO constitutes inequitable conduct so as to render the affected patents unenforceable.

26.     Upon information and belief, Katz, with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled, exercised a pattern and practice of conduct as part of the prosecution of the applications that ultimately led to the patents asserted against Ahold and related applications—upon which the patents asserted against Ahold claim priority and which also contain related and material claimed subject matter—that violated the duty of candor, good faith and honesty owed by patent applicants.

27.     In addition to the aforementioned patents asserted against Ahold, other related patents and applications to which the patents asserted against Ahold claim priority, are relevant to the Counterclaim of unenforceability based on Katz's inequitable conduct. These related patents include U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,048,075 ("the '075 patent"),

- 21 -

5,365,575 ("the '575 patent"), 6,148,065 ("the '065 patent"), 6,016,344 (" the '344 patent"),

5,014,298 ("the '298 patent"), 5,224,153 ("the '153 patent"), 5,359,645 ("the '645 patent"),

5,073,929 ("the '929 patent"), 5,251,252 ("the '252 patent").  The related applications include

U.S. Patent Application Nos. 06/753,299, ("the '299 application"), 07/342,506 ("the '506

application") and 07/640,337 ("the '337 application").

      28.     Upon information and belief, on multiple occasions as part of the prosecution of

the patents asserted against Ahold and in related patents and/or applications and with the intent

to deceive the USPTO, Katz intentionally: (I) failed to disclose material prior art known to Katz;

(II) failed to inform the USPTO of inconsistent positions taken during prosecution; (III) failed to

identify or disclose material information from related litigations or proceedings; (IV) failed to

inform patent examiners of adverse findings by others; and (V) made false claims of priority so

as to avoid the prior art.  These repeated and intentional violations of Katz's duty of candor,

good faith and honesty, which are described in detail below, render the patents asserted against

Ahold invalid and unenforceable.

**I.**      **Katz Intentionally Failed to Disclose Material Prior Art.**

      29.     Upon information and belief, as part of the prosecution of the patents asserted

against Ahold and related patents and applications, Katz repeatedly failed to disclose material

references known to Katz with the intent to deceive the USPTO, as set forth below.

      **A.**      **Katz intentionally failed to disclose the Barger patent.**

      30.     Upon information and belief, Katz had knowledge of U.S. Patent No. 4,071,698 to

Barger, Jr. *et al.* ("the Barger patent") at least as early as January 1989.  Katz failed to disclose

the Barger patent to the USPTO patent examiner as part of the prosecution of several of the

patents asserted against Ahold and related patents and/or applications, including at least the '739,

'150, '298, '929, '984 and '252 patents, which were pending as of, or filed after, January 1, 1989.

31.    The Barger patent is prior art to the patents asserted against Ahold because it was filed in the USPTO on January 10, 1977, a full eight years before the effective filing date of Katz's first patent.

32.    The Barger patent is material to the patents asserted against Ahold.  The Barger patent discloses an automated interactive voice system for marketing merchandise, such as audio recordings.  A customer selects and listens to an audio sample and may arrange payment by credit card or other means.  The system maintains a complete record of all transactions—including requests for demonstrations played by each customer—in order to maintain current inventory records and determine trends.  The system uses the transaction history to determine whether a customer is a "free loader" and limits the customer's access to the system accordingly.

33.    The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains information from the customer and enters the information into a database.  When the customer requests a specific demonstration, the operator enters the appropriate code into the system and the audio sample is played to the customer.  Upon completion of the demonstration, the system returns the customer to a live operator, who will take the order or provide another audio sample for the caller to listen to.

34.    Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the USPTO in deciding whether to allow the claims of the patents asserted against Ahold and related patents and/or applications.  For example, the Barger patent discloses storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

- 23 -

35.    The materiality of the Barger patent to the patents asserted against Ahold was confirmed by the USPTO Board of Patent Appeals and Interferences, which in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998) affirmed a patent examiner's rejection of certain of Katz's pending claims based in part on the disclosure of the Barger patent.

36.    Upon information and belief, Katz had knowledge of the materiality and relevance of the Barger patent to the claims of the patents asserted against Ahold that were prosecuted by Katz before the USPTO. Upon information and belief, Katz became aware of the Barger patent on or about December 1988 as part of the prosecution of an international application (WO 87/000375), which is based on Katz's U.S. Patent Application No. 06/753,299 ("the '299 application"). As part of the prosecution of the WO 87/000375 application, the European Patent Office ("EPO") identified the Barger patent as "particularly relevant" in regard to the patentability of the claims. In addition, the EPO sent the international search report identifying the Barger patent as "particularly relevant" to Katz's European attorney, Mr. Graham F. Coles, on or about December 27, 1988.

37.    Notably, all of the patents asserted against Ahold claim priority to the '299 application. Thus, the international search report put Katz on notice both of the existence and materiality of the Barger patent to the subject matter claimed in the patents asserted against Ahold.

38.    Upon information and belief, Katz considered the Barger patent so significant that Katz ultimately acquired the patent by assignment through First Data Resources Inc. ("First Data") on November 2, 1990 and by subsequent assignment to RAKTL on September 17, 1994.

39.     Notwithstanding Katz's knowledge of the Barger patent, upon information and belief, Katz failed to disclose this piece of prior art to the USPTO as part of the prosecution of at least the '739, '150, '298, '929,'984 and '252 patents.

40.     In addition, Katz did not disclose the existence of the Barger patent to the USPTO as part of the substantive prosecution of the '285 patent. Rather, Katz waited until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose the Barger patent, only seven days before the '285 patent issued.

41.     Upon information and belief, Katz intentionally withheld the material Barger patent from the USPTO as part of the prosecution of at least the '739, '150, '298, '929, '984, '252 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. These patents are either patents asserted against Ahold, in the case of the '150, '984, '707, '309 and '285 patents, and/or are patents from which patents asserted against Ahold claim priority and which share related, material subject matter.

42.     The inequitable conduct committed by Katz with respect to at least the '739, '150, '298, '929, '984, '252 and '285 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Barger patent is material, rendering these related patents unenforceable.

43.     At least, the '156 patent asserted against Ahold claims priority from and claims subject matter related to both the '150 and '285 patents to which the Barger patent is also material. Accordingly, at least the '156 patent asserted against Ahold is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '150 and '285 patents.

- 25 -

44.    Likewise, at least the '863, '156, '551, '984, '252, '734, '120, '065, '223 and '360 patents all claim priority from and claim subject matter related to the '739 patent to which the Barger patent is also material.  The close relationship between these children patents and the '739 parent patent is evidenced by terminal disclaimers filed by Katz as part of the prosecution of at least the '863, '156, '551, '065 and '360 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '739 patent. Accordingly, at least the '309, '707, '863, '156, '551, '984, '252,'734, '120, '065, '223 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

45.    Similarly, at least the '965 patent asserted against Ahold claims priority from and claims subject matter related to both the '153 and the '298 patents to which the Barger patent is also material.  Accordingly, at least the '965 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '153 and the '298 patents.

46.    Likewise, at least the '734, '120 and '223 patents asserted against Ahold claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the Barger patent is also material.  The close relationship between the '734, '120 and '223 patents and the '984 parent patent is evidenced by terminal disclaimers filed by Katz as part of the prosecution of at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '984 patent. Accordingly, at least the '734, '120 and '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929, '984 and '252 patents.

- 26 -

47.     Accordingly, at least the '309, '707, '150, '285, '863, '156, '551, '984, '734,

'120, '965, '223 and '360 patents asserted against Ahold, are all rendered unenforceable for

inequitable conduct due to Katz's intentional failure to disclose the Barger patent to the USPTO.

### B.    Katz intentionally failed to disclose the DeBruyn patent.

48.     Upon information and belief, Katz had knowledge of European Patent No.

0032410 to DeBruyn ("the DeBruyn patent") at least as early as January 1989. Katz failed to

disclose the DeBruyn patent to the USPTO during the prosecution of certain of Katz's patents,

including at least the '150, '984 and '285 patents, which are patents asserted against Ahold, as

well as the related '739 and '929 patents. Except for the '968 and the '150 patent, all of the

patents asserted against Ahold claim priority to one or more of these patents.

49.     The DeBruyn patent is prior art to the patents asserted against Ahold because it

was published by the EPO as European Patent Specification EP0032410A1 on July 22, 1981.

50.     The DeBruyn patent is material to the patents asserted against Ahold. The

DeBruyn patent discloses an interactive voice system for implementing a lottery. The system

receives a call from a prospective player along with the player's telephone number. Both French

and English speaking players are accommodated by the same system by receiving calls dialed to

different telephone numbers. A caller's access to the system may be restricted based on various

criteria such as the number times a caller accesses the system per week or the amount wagered.

DeBruyn also discloses issuing secret codes to prospective players that can also be entered into

the system before access is granted to the caller.

51.     The DeBruyn patent discloses that, after a player gains access to the system, the

player is cued to enter a lottery number using a telephone keypad. After the player enters the

lottery number, the system stores the lottery number and the player's telephone number. The

system will also parrot back to the caller the lottery number entered to confirm proper entry of the desired lottery number for play before subsequently disconnecting the call.

52.    Because the DeBruyn patent discloses many features relevant to Katz's claims, it would have been material to the USPTO in deciding whether to allow the claims of the patents asserted against Ahold.  For example, the DeBruyn patent discloses receiving a caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers for limited access or limits on use.  The DeBruyn patent also discloses qualifying callers based on the caller's telephone number.

53.    The DeBruyn patent is substantively identical to Canadian Patent No. 1,162,336 to DeBruyn ("The DeBruyn Canadian patent"), which has been relied upon by the Director of the USPTO in ordering the reexamination of several of Katz's patents, including the '707 and '309 patents.  With respect to the '309 patent, for example, upon information and belief, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate."  Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6.  Upon information and belief, the Director has similarly determined that the DeBruyn patent anticipates, for example, at least one claim in each of the '023 (which is related to the patents asserted against Ahold) and '707 patents under 35 U.S.C. § 102.  Like most of the patents asserted against Ahold, each of the '707, '309 and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

- 28 -

54.     Further, a patent examiner at the USPTO has determined that the DeBruyn

Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent

under 35 U.S.C. § 102(b).  Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged

Proceedings], Office Action mailed September 9, 2005, at 2, 9-19.  The patent examiner has also

relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-

58 under 35 U.S.C. § 103.  *Id.* at 2, 32-43.

55.     Upon information and belief, Katz became aware of the DeBruyn patent and its

materiality to the subject matter claimed in the patents asserted against Ahold by at least as early

as January 1989.  The same international search report that identified the Barger patent and, upon

information and belief, was sent to Katz's European attorney, Mr. Graham F. Coles, on

December 27, 1988, also identified the DeBruyn patent as "particularly relevant" with respect to

the patentability of the claims of Katz's '299 application.

56.     Notwithstanding Katz's knowledge of the DeBruyn patent and its materiality,

upon information and belief, Katz failed to disclose this material prior art to the USPTO as part

of the prosecution of at least the '150, '075, '739, '929, '984 and '252 patents.

57.     In addition, Katz did not disclose the existence of the DeBruyn patent to the

USPTO as part of the substantive prosecution of the '285 patent.  Rather, Katz waited until after

the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose

the DeBruyn patent, only seven days before the '285 patent issued.

58.     Upon information and belief, Katz intentionally withheld the material DeBruyn

patent from the USPTO as part of the prosecution of at least the '150, '285, '739, '075, '929,

'984 and '252 patents with the intent to deceive the USPTO into issuing patent claims of a scope

beyond which Katz was entitled, thereby committing inequitable conduct and rendering those

- 29 -

patents unenforceable. These patents are either patents asserted against Ahold, in the case of the '150, '984 and '285 patents, and/or are patents from which patents asserted against Ahold claim priority and which share related, material subject matter.

59.    The inequitable conduct committed by Katz with respect to at least the '150, '285, '739, '075, '929, '984 and '252 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the DeBruyn patent is material, rendering these related patents unenforceable.

60.    At least the '309, '707, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents, which are patents asserted against Ahold, all claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material. Accordingly, at least the '309, '707, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

61.    Likewise, at least the '156 patent asserted against Ahold claims priority from and claims subject matter related to both the '150 and '285 patents to which the DeBruyn patent is also material. Accordingly, at least the '156 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '150 and '285 patents.

62.    Similarly, at least the '734, '120 and '223 patents, which are patents asserted against Ahold, all claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the DeBruyn patent is also material. The close relationship between these children patents and those to which they claim priority is evidenced by terminal disclaimers filed by Katz for at least the '734, '120 and '223 patents, effectively conceding that there is no

- 30 -

patentable difference between the subject matter claimed in the '734 patent and that disclosed in the '252 patent. Accordingly, at least the '734, '120 and the '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929, '984 and '252 patents.

63.    Accordingly, at least the '309, '707, '150, '984, '309, '707, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents asserted against Ahold are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the DeBruyn patent to the USPTO.

### C.    Katz intentionally failed to disclose the Yoshizawa article.

64.    Upon information and belief, during prosecution on the merits of at least the '309 and '575 patents, Katz failed to disclose a prior art article entitled "Voice Response System for Telephone Betting" by Yoshizawa et al. ("the Yoshizawa article") that appeared in the 1977 issue of *Hitachi Review* magazine. The '309 patent, which is asserted against Ahold, is the parent to the '707 patent, also asserted against Ahold. The '575 patent is the parent to the '156 patent asserted against Ahold. Upon information and belief, Katz had knowledge of the Yoshizawa article at least as early as 1992, during the prosecution of the '309 and '575 patents before the USPTO. Nevertheless, Katz did not disclose the Yoshizawa article to the patent examiner during the prosecution of the '575 patent until September 16, 1994. This submission of the Yoshizawa article was after substantive examination of the application and after payment of the issue fee. Katz did not disclose the Yoshizawa article during the prosecution of the '309 patent. Accordingly, the Yoshizawa article was not considered by the patent examiner in determining patentability of the '309 or '575 patents.

65.    The Yoshizawa article discloses an automated off-track betting system. The system includes a voice response unit, a public telephone network and a central processing unit.

- 31 -

Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets; for example, a wager on a horse to show. The entered data is then stored in the caller's account file. Each wager is counted against a preset daily wagering limit. The caller is provided with a registration number referencing the transaction. Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account. The article specifically mentions that the system could be used for "winning lot number service"—in other words, a lottery.

66.     Many features relevant to the '309 patent claims are disclosed in the Yoshizawa article. For instance, Yoshizawa discloses an interface structure for interfacing remote terminals and receiving data from said remote terminals, a voice generator structure for providing the remote terminals with vocal operating instructions, record structure for initiating files and storing data received from said remote terminals, and qualification structure for limiting the extent of access of the system by the callers.

67.     Similarly, many features relevant to the '575 patent claims are disclosed in the Yoshizawa article. For example, Yoshizawa discloses limiting access and use to a telephone based gambling or lottery system and qualifying callers based on an account number.

68.     Upon information and belief, Katz was aware of the materiality of Yoshizawa article at least as early as September 2, 1992—more than a year before the issuance of the '309 patent and over two years before the issuance of the '575 patent—when it was cited in response to interrogatories in the *First Data Resources Inc. v. West Interactive Corp.* Civil Action No. 91-4471-TJH (C.D. Cal. August 20, 1991) litigation.

69.     Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality, upon information and belief, Katz failed to disclose this material prior art reference to the

USPTO as part of the prosecution of at least the '309 and '575 patents in violation of Katz's duty of candor.

70.     Upon information and belief, Katz intentionally withheld the material Yoshizawa article from the USPTO as part of the prosecution of at least the '309 and '575 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '309 and '575 patents unenforceable.

71.     This inequitable conduct committed by Katz with respect to at least the '309 and '575 patents taints other related patents, which claim priority to the '309 and '575 patents and which claim related subject matter to which the Yoshizawa article is material, rendering these related patents unenforceable.

72.     At least, the '707 patent asserted against Ahold claims priority from and claims subject matter related to the '309 patent to which the Yoshizawa article is material. The related nature of the '309 patent and the subsequently filed patents is further evidenced by terminal disclaimers filed as part of the prosecution of both the '309 and '707 patents.

73.     Accordingly, at least the '309 and '707 patents asserted against Ahold is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '309 patent.

74.     Similarly, at least, the '156 patent, which is a patent asserted against Ahold, claims priority from and claim subject matter related to the '575 patent to which the Yoshizawa article is also material. The related nature of the '575 patent and the subsequently filed patents is further evidenced by terminal disclaimers filed as part of the prosecution of at least the '156

patent, effectively conceding that there is no patentable distinction between this patent and the
'575 patent.

75.    Accordingly, at least the '156 patent asserted against Ahold is rendered
unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the
related '575 patent.

**D.    Katz intentionally failed to disclose the Florafax brochure.**

76.    Upon information and belief, prior to Katz paying the issue fee on June 29, 1994
for the '575 patent, Katz had knowledge of a brochure dated January 22, 1986 and circulated by
Florafax during this timeframe ("the Florafax brochure"). However, Katz did not disclose this
brochure to the USPTO prior to the payment of the issue fee for the '575 patent.

77.    The Florafax brochure is material to at least the '575 patent. The Florafax
brochure discloses a service for providing a recorded message in association with the delivery of
a floral bouquet. After purchasing the bouquet, the sender receives a card from the florist that
includes a telephone number and an ID number printed thereon. Upon calling the number
indicated, the sender is prompted to enter the ID number and record a personal message. When
the flowers are delivered, a corresponding card instructs the recipient to call a specified
telephone number to hear the sender's prerecorded message. The message may only be played
twice before it is automatically erased. The Florafax "Talking Bouquet" system was test
marketed at least as early as December 1985, thereby evidencing public use of the concepts
embodied in the brochure.

78.    The Florafax brochure and associated service operation disclose many of the
features claimed in the related '575 patent. For example, providing cards or tickets with an
identification number printed thereon for access to an automated interactive system.

- 34 -

79.    Upon information and belief, Katz was made aware of the Florafax reference through the *First Data Resources Inc. v. West Interactive Corp.* litigation, prior to paying the issue fee for the application issuing as the '575 patent.

80.    Upon information and belief, notwithstanding Katz's knowledge of the Florafax brochure and its materiality, Katz failed to disclose it to the USPTO as part of the prosecution on the merits of at least the '575 patents in violation of Katz's duty of candor.

81.    Upon information and belief, Katz intentionally withheld the material Florafax brochure from the USPTO prior to the payment of the issue fee during prosecution of the '575 patent. Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '575 patent unenforceable.

82.    This inequitable conduct committed by Katz with respect to at least the '575 patent taints other related patents, which claim priority to the '575 patent and which claim related subject matter to which the Florafax brochure is material, rendering these related patents unenforceable.

83.    At least the '156 patent, which is a patent asserted against Ahold, claims priority from and claims subject matter related to the '575 patent to which the Florafax brochure is also material. At least the '156 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '575 patent.

84.    Accordingly, at least the '156 patent asserted against Ahold is rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Florafax brochure to the USPTO.

- 35 -

**E.    Katz intentionally failed to disclose the Perdue and Hester articles.**

85.    Upon information and belief, during prosecution on the merits of at least the '309

patent, Katz failed to disclose a prior art article entitled "Conversant I Voice System:

Architecture and Applications" by Perdue, *et al.* ("the Perdue article"), that appeared in the

September/October 1986 issue of the *AT&T Technical Journal*.  Upon information and belief,

Katz was made aware of the Perdue article before the filing of the '309 patent during the

prosecution of U.S. Patent Nos. 5,109,404 ("the '404 patent") and 5,218,631 ("the '631 patent")

before the USPTO.  Specifically, the Perdue article was cited by the patent examiner first during

the prosecution of the '404 patent in an office action dated May 28, 1991, then again during the

prosecution of the '631 patent in an office action dated June 8, 1991.  Nevertheless, Katz did not

disclose the Perdue article during the prosecution of the '309 patent.  Accordingly, the Perdue

article was not considered by the patent examiner in determining patentability of the '309 patent.

86.    Upon information and belief, during prosecution on the merits of at least the '309

patent, Katz also failed to disclose a prior art reference entitled "The AT&T Multi-Mode Voice

systems - Full Spectrum Solutions for Speech Processing Applications" by Hester. et al. ("the

Hester article"), as presented at the Proceedings of the 1985 *AVIOS Conference*.  Upon

information and belief, Katz was made aware of the Hester article at before the filing of the '309

patent, during the prosecution of U.S. Patent Nos. 5,109,404 ("the '404 patent") before the

USPTO.  Specifically, the Hester article, like the Perdue article, was cited by the patent examiner

during the prosecution of the '404 patent in an office action dated May 28, 1991—more than two

years before the issuance of the '309 patent.  Nevertheless, Katz did not disclose the Hester

article to the patent examiner during the prosecution of the '309 patent.  Accordingly, the Hester

article was not considered by the patent examiner in determining patentability of the '309 patent.

87.    Both the Perdue and Hester articles are material to the patentability of the '309 patents as the Perdue and Hester articles disclose the architecture, operation, and applications of the "Conversant I" system which was made and used by AT&T in detail. The "Conversant I" system was an programmable interactive voice response system that was used for telephonic access and interaction by callers. The "Conversant I" system was also the subject of the an article entitled, "AT&T's Conversant I Voice system" by Moosemiller ("Moosemiller article") that appeared in the March/April 1986 issue of *Speech Technology*. The Moosemiller article, which was only six pages in length, was used later by the USPTO during the reexamination of the '309 to invalidate 14 claims on the basis of anticipation. The Moosemiller article disclosed the same system, architecture and applications present in the "Conversant I" system. The Perdue and Hester articles provide greater detail regarding the "Converant I" system and would therefore have been material to the examination of the '309 patent.

88.    Upon information and belief, Katz was aware of the materiality of Perdue and Hester articles before the application which led to the '309 patent was filed.

89.    Notwithstanding Katz's knowledge of the Perdue and Hester articles and their materiality, upon information and belief, Katz failed to disclose these material prior art references to the USPTO as part of the prosecution of at least the '309 patent in violation of Katz's duty of candor.

90.    Upon information and belief, Katz intentionally withheld the material Perdue and Hester articles from the USPTO as part of the prosecution of at least the '309 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '309 patent asserted against Ahold unenforceable.

91.    This inequitable conduct committed by Katz with respect to at least the '309

patents taints other related patents, which claim priority to the '309 patent and which claim

related subject matter to which the Perdue and Hester articles are material, rendering these

related patents unenforceable.

92.    Accordingly, at least the '707 patent, which is a patent asserted against Ahold,

claims priority from and claims subject matter related to the '309 patent to which the Hester and

Perdue articles are also material.  The related nature of the '309 patent asserted against Ahold

and the subsequently filed patents is further evidenced by the terminal disclaimers filed as part of

the prosecution of both the '309 and '707 patents.

93.    Accordingly, at least the '309 and '707 patents asserted against Ahold are

rendered unenforceable due to the inequitable conduct committed by Katz as part of the

prosecution of the '309 patent.

**F.    Katz intentionally failed to disclose Katz's own International Application
        WO 87/00375.**

94.    Upon information and belief, Katz had knowledge of and failed to disclose Katz's

own published international application WO 87/00375 ("the WO '375 application") to the

USPTO prior to the payment of the issue fee during prosecution of the '285 patent, which is a

patent asserted against Ahold.  Upon information and belief, Katz also failed to disclose the WO

'375 application as part of the prosecution of at least the related '739 patent.

95.    The WO '375 application teaches a statistical analysis system for use in

conjunction with a public communication facility.  When the system receives a call, a voice

generator prompts the caller for information such as a key number or the caller's telephone

number.  If available, the caller's telephone number may be taken directly from the

communication facility.  After qualifying the caller using the number received, the system

retrieves polling-type data from the callers which is combined with stored data to isolate a select subset of callers. The WO '375 application has the same specification as the initial U.S. '299 application Katz filed to which all other patents asserted against Ahold claim priority and discloses much of the same subject matter incorporated in subsequent patents claiming priority to it.

96.    The WO '375 application was filed under the Patent Cooperation Treaty ("PCT") and published on January 15, 1987. Pursuant to 35 U.S.C. § 102(b), the WO '375 application may be considered prior art for any claims having an effective filing date more that one year after the January 15, 1987 publication date.

97.    The '739 and '285 patents were all filed more than one year after the publication date of January 15, 1987. The '739 and '285 patents incorporate additional subject matter in their specifications relative to the WO '375 application. Further, the '739 and '285 patents claim additional subject matter relative to the WO '375 application. Therefore, the WO '375 application can be considered as prior art for any new matter that was added and claimed in the '739 and '285 patents.

98.    The WO '375 application would have been material to the patent examiner in determining what claims, if any, Katz was entitled to in the '285 patent asserted against Ahold and the related '739 patent. For example, the materiality of the WO '375 application was confirmed by the USPTO when it was cited against the '984 patent by the patent examiner in May of 1991. In particular, the WO '375 application would be relevant to the basic elements claimed in the '739 and '285 patents, such as prompting callers with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

99.    Upon information and belief, Katz was aware of the duty to disclose information material to the patentability of any of Katz's pending patent applications. Katz had personal knowledge of the public disclosure of the WO '375 application. Katz failed to disclose the WO '375 application to the patent examiner as part of the prosecution of at least the '739 patent. Katz also failed to disclose the WO '375 application to the patent examiner prior to the payment of the issue fee during prosecution of the '285 patent. Therefore, the WO '375 application was not considered by the patent examiners in determining patentability as part of the prosecution on the merits of either the '739 or '285 patent's.

100.    Upon information and belief, Katz intentionally withheld the WO '375 application from the USPTO as part of the prosecution on the merits of at least the '739 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. These patents are either patents asserted against Ahold, in the case of the '285 patent, and/or are patents from which patents asserted against Ahold claim priority and which share related, material subject matter.

101.    The inequitable conduct committed by Katz with respect to at least the '739 and '285 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the WO '375 application is material, rendering these related patents unenforceable. For example, all of the patents asserted against Ahold, with the exception of the '968 and the '150 patents, claim priority from and claim subject matter related to the '739 patent to which the WO '375 application is also material. Accordingly, at least the '984, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed in the parent '739 patent.

- 40 -

102.    Accordingly, at least the '984, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents asserted against Ahold are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the WO '375 application to the USPTO.

**G.    Katz intentionally failed to disclose the Daudelin '995 patent.**

103.    Upon information and belief, Katz had knowledge of U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") at least by October 26, 1997. Katz did not, however, disclose the Daudelin '995 patent during the prosecution of at least the '120 patent asserted against Ahold.

104.    The Daudelin '995 patent, which was filed on October 6, 1986 and issued on July 24, 1990, is prior art to at least the '120 patent, which was filed in 1995.

105.    The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent. The Daudelin '995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products. Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof. Callers are qualified based in part on their calling party number, and the particular product they selected.

106.    Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent. For example, the '120 patent claims receiving calls in a toll free mode, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

107.    Upon information and belief, Katz was aware of the Daudelin '995 patent during the prosecution of the '120 patent, having cited it to the USPTO more than two years prior to the issuance of the '120 patent. Upon information and belief, Katz listed the '995 patent in previous

- 41 -

IDS submissions during the prosecution of Katz's patents, although Katz had misspelled the name as "Dandelin."

108.     Upon information and belief, Katz intentionally withheld the material Daudelin '995 patent from the USPTO during the prosecution of at least the '120 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

109.     The inequitable conduct committed by Katz with respect to the '120 patent taints other related patents, which claim priority to '120 patent and which claim related subject matter to which the Daudelin '995 patent is material, rendering these related patents unenforceable.

110.     At least the '223 patent, which is a patent asserted against Ahold, claims priority to the '120 patent and claims subject matter related to the '120 patent, to which the Daudelin '995 patent is material.  Accordingly, at least the '223 patent is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '120 patent.

111.     Accordingly, at least the '120, and '223 patents asserted against Ahold are rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Daudelin '995 patent to the USPTO.

### H.     Katz intentionally failed to disclose the Szlam '911 patent.

112.     Upon information and belief, Katz was made aware of U.S. Patent No. 4,797,911 ("the Szlam '911 patent") at least as early as September 10, 1991.  Katz did not, however, disclose the Szlam '911 patent during the prosecution of at least the '309 patent asserted against Ahold.

113.     The Szlam '911 patent, which was filed on June 16, 1987 and issued on January 10, 1989, is prior art to at least the '309 patent asserted against Ahold, which was filed in 1991.

- 42 -

114.    The Szlam '911 patent discloses a call center for receiving incoming calls, processing ANI to retrieve customer information, reviewing keypad information for placing or changing orders and connecting to an agent if needed. Further, it would have been obvious to combine the subject matter disclosed in the Szlam '911 patent with that disclosed in the Perdue and Hester articles.

115.    The Szlam '911 patent is material to certain of the claimed subject matter under consideration during prosecution of at least the '309 patent. The '309 patent claimed subject matter includes interface structure for receiving calls from terminals, including ANI, providing voice signals to callers, memory storage structure for storing data pertaining to callers as identified by ANI, structure for limiting extent of access to the system by callers, and assigning designations to callers. Because the Szlam '911 patent discloses many of the features claimed in the '309 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '309 patent.

116.    Upon information and belief, Katz was aware of the Szlam '911 patent during the prosecution of the '309 patent since it was identified by the patent examiner during at least the prosecution of U.S. Patent No. 5,048,075 ("the '075 patent"), which issued on September 10, 1991, and U.S. Patent No. 5,128,984 ("the '984 patent"), which issued on July 7, 1992.

117.    Upon information and belief, Katz intentionally withheld the material Szlam '911 patent from the USPTO during the prosecution of at least the '309 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '309 patent asserted against Ahold unenforceable.

- 43 -

118.    The inequitable conduct committed by Katz with respect to the '309 patent taints other related patents, which claim priority to '309 patent and which claim related subject matter to which the Szlam '911 patent is material, rendering these related patents unenforceable.

119.    At least the '707 patent, which is a patent asserted against Ahold, claims priority to the '309 patent and claims subject matter related to the '309 patent, to which the Szlam '911 patent is material. Accordingly, at least the '707 patent is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '309 patent.

120.    Accordingly, at least the '309 and '707 patents asserted against Ahold are rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Szlam '911 patent to the USPTO.

## I.    Katz intentionally failed to disclose Periphonics prior art.

121.    Upon information and belief, Katz intentionally withheld from the USPTO highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Mr. Katz was not entitled. Upon information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm"). The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the patents asserted against Ahold.

122.    In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." Paper no. 3, filed November 4,

- 44 -

1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

123.    Katz made the same statements in the applications that issued as the '707 patent (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751). Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

124.    In connection with making these statements and references during prosecution of the '707, '965, '285, '863 and '551 patents, Katz submitted to the USPTO certain materials containing Bates numbers within the range of the West materials. In addition to those submitted, the original West materials further included a number of Periphonics references, including:  (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095); and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (W73219-W73302).

125.    The Bank-From-Home reference and the VoicePac reference are highly relevant to many claims of the patents asserted against Ahold. The Bank-From-Home reference describes such limitations of claims of the patents asserted against Ahold as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system. The VoicePac reference describes such limitations of

- 45 -

claims of the patents asserted against Ahold as interfacing callers to the system and transferring callers to a customer service representative.

126.    While other references containing Bates numbers within the range of the West materials were submitted to the Patent and Trademark Office during prosecution of the '707, '965, '285, '863 and '551 patents, the Bank-From-Home and VoicePac references were, upon information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality. Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the USPTO, and constitutes inequitable conduct. Thus, at least the '707, '965, '285, '863 and '551 patents asserted against Ahold are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

127.    Other patents asserted against Ahold are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability. For example, the '065 and '360 patents have specifications substantially identical to those of the '707, '863 and '551 patents, and rely for priority on the '739 patent, also having a substantially identical specification. The '065 and '360 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '863, '551 and '739 patents. In addition, due to the interrelatedness of all of these patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

128.    Thus, Katz's inequitable conduct renders each of the '707, '965, '285, '863, '551, '065 and '360 patents unenforceable in its entirety.

II.     **Katz Intentionally Failed to Inform the USPTO of Inconsistent Positions Taken During Prosecution.**

A.      **Katz failed to inform the USPTO of inconsistent positions taken with respect to the Daudelin patents.**

129.    At least three patents to Daudelin, including the Daudelin '955 patent and U.S.

Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"),

collectively ("the Daudelin patents"), were cited during the prosecution of certain of Katz patents

asserted against Ahold and related patents. The specifications for the Daudelin '910 and the '519

patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed

Number Identification Service) functionality.

130.    Upon information and belief, Katz repeatedly took inconsistent positions as to the

scope of the Daudelin patents to different patent examiners at different times during the

prosecution of the patents asserted against Ahold and failed to inform the different patent

examiners of Katz's inconsistent positions.

131.    During prosecution of the '734 patent, Katz labeled various prior art references as

either "D", "A", "D/A" so as to indicate whether or not the reference was "pertinent to DNIS

capabilities", "pertinent to ANI capabilities", or both, respectively. During the prosecution of

the '734 patent, Katz did not label the Daudelin '910 patent as either "D", "A", "D/A". By

failing to label the Daudelin '910 patent as either "D", "A", "D/A", Katz, thereby, characterized

the Daudelin '910 patent as not being pertinent to either DNIS or ANI capabilities.

132.    Whereas, as part of the prosecution of the '551 patent, Katz took a position that

was contrary to the position Katz took as part of the prosecution of the '734 patent. Specifically,

as part of the prosecution of the '551 patent, Katz labeled the Daudelin '910 patent with a "D".

Katz, therefore, took the position, part of the prosecution of the '551 patent, that the Daudelin

'910 patent was pertinent to DNIS capabilities.

- 47 -

133.    Subsequently, however, as part of the prosecution of the '360 patent, Katz took a position that was contrary to that taken as part of the prosecution of the '551 patent. Specifically, as part of the prosecution of the '360 patent, Katz asserted that "Daudelin does not teach DNIS."

134.    Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551, '734 and '360 patents asserted against Ahold unenforceable.

135.    At least, the '120, '065 and'223 patents all claim priority to one or more of the '551, '734 and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material.  Accordingly, at least the '120, '065 and'223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734 and '360 patents.

136.    Accordingly, at least the '551, '734, '120, '223 and '360 patents asserted against Ahold are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

- 48 -

**B.    Katz failed to inform the USPTO of inconsistent positions taken with respect to the Riskin patent.**

137.    Upon information and belief, Katz also failed to inform the USPTO of inconsistent positions that Katz took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

138.    As part of the prosecution of the '075 patent, Katz stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish routing . . . ."

139.    As part of the prosecution of the '120 patent, Katz took a position that was contrary to the position that Katz took as part of the prosecution of the '075 patent. Specifically, as part of the prosecution of the '120 patent, Katz labeled the Riskin patent with an "A", and not with a "D" or "D/A". By labeling the Risking patent with an "A" only, Katz characterized the Riskin patent to the patent examiner as disclosing aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

140.    By taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions, and having the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, Katz committed inequitable conduct, thereby rendering at least the '075 and '120 patents unenforceable.

141.    At least, the '156 and '223 patents, which are patents asserted against Ahold, each claim priority to at least either the '075 or '120 patents and claim subject matter related to these patents to which the Riskin patent is material. Accordingly, at least the '156 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '075 and '120 patents.

- 49 -

142.    Accordingly, at least the '156, '120 and'223 patents asserted against Ahold are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

## III.    Katz Intentionally Failed to Identify or Disclose Material Information From Related Litigations or Proceedings.

143.    Pursuant to the MPEP, including § 2001.01 and § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the USPTO has a duty to bring to the attention of the USPTO "the existence of such litigation and any other material information arising therefrom."

144.    Upon information and belief, as set forth below, as part of the prosecution of several of the patents asserted against Ahold, Katz failed to identify or disclose to the patent examiners material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the patents asserted against Ahold, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

### A.    Katz failed to disclose the *West Interactive Corp. v. First Data Resources, Inc.* litigation.

145.    On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska. West alleged, *inter alia*, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent) are invalid on several theories including prior use and prior art.

- 50 -

146.    West's allegations in that suit are material to at least the '309, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents asserted against Ahold, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

147.    Upon information and belief, during the prosecution of these patents asserted against Ahold, Katz was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

148.    Nonetheless, upon information and belief, Katz did not disclose the existence of the *West Interactive Corp. v. First Data Resources, Inc.* litigation to the examiners of the '309, '707, '984, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents asserted against Ahold as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents, the nature of West's allegations relating to the invalidity and unenforceability of the '739 and '150 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**B.      Katz failed to disclose the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation.**

149.    On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

150.    The defendants in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents.

151.    The defendants' counterclaims in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation are material to at least the '309, '707, '984, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents asserted against Ahold, all of which claim priority to at least the '739 patent.

152.    Upon information and belief, during the prosecution of these patents asserted against Ahold, Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

153.    Nonetheless, upon information and belief, Katz did not disclose the existence of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation to the examiners of the '309, '707, '984, '285, '863, '156, '551, '734, '120, '965, '223 and '360 patents asserted against Ahold as part of prosecution of these patents.  Moreover, upon information and belief, Katz did not disclose to the examiners of these patents asserted against Ahold, the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents as set forth in the pleadings and other papers arising in the litigation.  Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

C.    **Katz failed to disclose the *First Data Resources Inc. v. West Interactive Corp.,
et al.* litigation**

154.    On August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH,
against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District
Court for the Central District of California for the alleged infringement of the '739, '150 and
'298 patents.

155.    The defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.*
litigation filed a counterclaim alleging, *inter alia*, the invalidity and unenforceability of the '739,
'298 and '150 patents.

156.    The defendants' allegations in that suit are material to at least the '309, '707,
'984, '252, '285, '863, '551, '734 and '120 patents asserted against Ahold, all of which claim
priority to at least the '739 patent.

157.    Upon information and belief, during the prosecution of these patents asserted
against Ahold, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp., et al.*
litigation and of material information arising therefrom, as set forth in the pleadings and other
papers arising therein.

158.    Nonetheless, upon information and belief, as part of the prosecution of at least the
'984, '863, '551, '734 and '120 patents asserted against Ahold, Katz did not disclose the
existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the
case of the '285 patent, Katz waited to report the existence of the litigation until after payment of
the issue fee) to the examiners of the '309, '984, '863, '551, '734 and '120 patents asserted
against Ahold as part of prosecution of these patents.  Moreover, upon information and belief,
Katz did not disclose to the examiners of these patents asserted against Ahold, the nature of the
defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '298

- 53 -

patents as set forth in the pleadings and other papers arising in the litigation. Upon information

and belief, this failure to disclose was committed with the intent to deceive the USPTO into

issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable

conduct and rendering these patents unenforceable.

**D.**    **Katz failed to disclose the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation.**

159.    On February 9, 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against

Micro Voice Applications, Inc. and others in the United States District Court for the Northern

District of California for infringement of the '739, '153, '252, '309, '285, '707, '863·and '734

patents.

160.    In response to RAKTL's Complaint, the defendants in the *Ronald A. Katz*

*Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, *inter alia*,

that the '739, '153, '252, '309, '285, '707, '863 and '734 patents are invalid and/or

unenforceable.

161.    The defendant's allegations in the *Ronald A. Katz Technology Licensing, L.P. v.*

*Micro Voice Applications, Inc., et al.* litigation are material to at least the '065 and '965 patents,

which are related patents to the patents at issue in that suit.

162.    Upon information and belief, during the prosecution of the '065 and '965 patents,

Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications,*

*Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings

and other papers arising therein.

163.    Nonetheless, upon information and belief, as part of the prosecution of at least the

'065 and '965 patents, Katz did not disclose the existence of the *Ronald A. Katz Technology*

*Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation to the examiners of the '065

- 54 -

and '965 patents as part of prosecution of these patents. Moreover, upon information and belief,

Katz did not disclose to the examiners of these patents, the nature of the defendants' allegations

relating to the invalidity and unenforceability of the '739, '153, '252, '309, '285, '707, '863 and

'734 patents as set forth in the pleadings and other papers arising in the litigation. Upon

information and belief, this failure was committed with the intent to deceive the USPTO into

issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable

conduct and rendering these patents unenforceable.

E.    **Katz failed to disclose the *Ronald A. Katz Technology Licensing, L.P., et al. v. AT&T Corp., et al.* litigation.**

164.    On July 8, 1997, RAKTL and MCI Telecommunications Corp. brought suit, Civil

Action No. 97-CV-4453, against AT&T Corp. and others in the United States District Court for

the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '984,

'153, '252, '309, '285, '707, '645, '120, and '863 patents.

165.    In reply, AT&T Corp. asserted, *inter alia*, that the '739, '150, '298, '075, '929,

'984, '153, '252, '309, '285, '707, '645, '120, and '863 patents are invalid.

166.    AT&T Corp.'s allegations in the *Ronald A. Katz Technology Licensing, L.P. v.

AT&T Corp., et al.* litigation are material to at least the '120 patent asserted against Ahold, which

is related to and claims related subject matter to the patents involved in that litigation.

167.    Upon information and belief, during the prosecution of the '120 patent asserted

against Ahold, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T

Corp., et al.* litigation and of material information arising therefrom, as set forth in the pleadings

and other papers arising therein.

168.    Nonetheless, upon information and belief, Katz did not disclose the existence of

the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.,* litigation to the examiners

of the '120 patent asserted against Ahold as part of prosecution of this patent. Moreover, upon

information and belief, Katz did not disclose to the examiners of these patents asserted against

Ahold, the nature of AT&T's allegations relating to the invalidity of the '739, '150, '298, '075,

'929, '984, '153, '309, '285, '707, '645, '120, and '863 patents as set forth in the pleadings and

other papers arising in the litigation. Upon information and belief, this failure to disclose was

committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond

which Katz was entitled, thereby committing inequitable conduct and rendering these patents

unenforceable.

      **F.**     **Katz failed to disclose Patent Interference No. 103,697.**

      169.    Patent Interference No. 103,697 was declared on February 13, 1996, and was

finalized by November 20, 1996. As part of that interference, the Board of Patent Appeals and

Interferences ("BPAI") held that the specification of the '968 patent did not provide written

support for certain limitations of count 1—which was alleged by Katz to be fully supported by

the specification of the '968 patent—and that count 1 was, therefore, "not entitled to benefit of

[the '968 patent's] filing date."

      170.    The Board of Patent Appeals and Interferences' conclusion that the '968 patent

lacked written support for certain alleged limitations would have been material to the patent

examiners of the '863, '156, '965, '734 and '120 patents asserted against Ahold, for purposes of,

for example, establishing the effective date of a claim for purposes of analyzing prior art.

Indeed, upon information and belief, all of these patents asserted against Ahold claim priority to

the '968 patent, and many of them, including at least the '863, '156 and the '551 patents, are

disclaimed with respect to the '968 patent.

      171.    Nonetheless, upon information and belief, Katz failed to bring the existence of

Patent Interference No. 103,697 to the attention of the patent examiners of at least the '863, '156,

- 56 -

'965, '734 and '120 patents asserted against Ahold.  Moreover, upon information and belief,

Katz failed to bring to the attention of the patent examiners of at least the '863, '156, '965, '734

and '120 patents asserted against Ahold the Board of Patent Appeals and Interferences' findings,

i.e., that the specification of the '968 patent did not provide written support for certain limitations

of count 1 and that count 1 was, therefore, not entitled to benefit of the '968 patent's filing date.

172.    Upon information and belief, these failures to disclose were committed with the

intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was

entitled, thereby committing inequitable conduct and rendering at least the '863, '156, '965, '734

and '120 patents asserted against Ahold unenforceable.

**IV.    Katz Intentionally Failed to Inform Patent Examiners of Adverse Findings by Others.**

173.    The MPEP § 2001.06(b) states that each individual associated with the filing and

prosecution of a patent application before the USPTO has "a duty to bring to the attention of the

examiner, or other [USPTO] official involved with the examination of a particular application,

information within their knowledge as to other copending United States applications which are

'material to patentability' of the application in question."   Furthermore, according to this

section of the MPEP, such individuals:

> cannot assume that the examiner of a particular application is necessarily aware of
> other applications which are 'material to patentability' of the application in
> question, but must instead bring such other applications to the attention of the
> examiner.  For example, if a particular inventor has different applications pending
> in which similar subject matter but patentably indistinct claims are present that
> fact must be disclosed to the examiner of each of the involved applications.

**A.    Katz failed to disclose adverse findings in related patent prosecutions.**

174.    During the prosecution of the '344 patent, Katz made the false assertion that the

'968 patent supported the limitation "automatic number identification (ANI) decoder means

responsive to predetermined signals on said telephone trunk for providing a calling party

- 57 -

telephone number." Further, upon information and belief, Katz falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."

175.    The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is not a continuation of '968. . . ." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to the effective date of the '968 patent. Further, Examiner Brown rejected Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an "automatic number identification (ANI) decoder means"...."

176.    Despite Examiner Brown's refutation of Katz's assertions that the '344 patent application was a continuation of the '968 patent and that the '968 patent supported the automatic number identification (ANI) decoder means limitation, in the subsequent Patent Interference No. 103,697, Katz claimed support for "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" in the '968 patent.

177.    Further, upon information and belief, during the Patent Interference No. 103,697, Katz did not inform the Board of Patent Appeals and Interferences of Examiner Brown's prior repudiation of Katz's assertion Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation.

- 58 -

178.    Examiner Brown's prior repudiation of Katz's assertion would have also been material to the Board of Patent Appeals and Interferences' determination as to whether Katz was entitled to antedate the U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent"), particularly in as much, as the Board ultimately concluded that Count 1, which was alleged by Katz to have support in the '968 patent, was found lacking by the Board. Count 1 recited, in part, " means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" and "computer means ...responsive to said caller telephone number ..."

179.    Even though the Board concluded that support for the count 1 was lacking in the '968 patent, as part of the prosecution of the '156 Patent in 1997, Katz again alleged, but this time to Examiner Woo, that the '968 patent provided support for the limitation of "interface means...for receiving automatic number identification data..."  Specifically, Katz alleged that the claim limitation was supported by essentially the same text Katz previously cited during prosecution of the '344 patent and in the interference proceeding.

180.    Upon information and belief, Katz did not inform Examiner Woo of Examiner Brown's finding of the lack of written support in the '968 patent for the limitation "automatic number identification (ANI) decoder means". Nor did Katz inform Examiner Woo of the Board of Patent Interferences' finding of a lack of written support in the '968 patent for the limitation "computer means ... responsive to said caller telephone number...."

181.    Upon information and belief, Katz intentionally failed to inform the Board of Patent Appeals and Interferences and Examiner Woo of the prior repudiations of Katz's false assertions that certain claim limitations relating to processing ANI were supported in the '968 patent in violation of the duty of candor with the intent to deceive the USPTO into issuing patent

- 59 -

claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '156 patent asserted against Ahold unenforceable.

182.    Likewise, upon information and belief, during prosecution of the '965 patent, Katz attempted to traverse a claim rejection of Katz's then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before ...Szlam....."

183.    Upon information and belief, Katz failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means."

184.    Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means," would have been material to the examiner of the '965 patent in deciding the patentability of the pending claims, particularly with respect to antedating prior art.

185.    Upon information and belief, Katz intentionally failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion in violation of the duty of candor and with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 patent asserted against Ahold unenforceable.

186.    Likewise, during prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written support. Specifically, Examiner Brown stated that "[t]he text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for

"person-to-person" interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

187.    Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured in the '065 patent, and again, in another subsequently file application, which matured into the '360 patent. Both of these applications were before a different patent examiner, Examiner Weaver.

188.    Upon information and belief, Katz failed to inform Examiner Weaver that Examiner Brown found a lack of written support for the claimed subject matter in the prior '551 patent based on the same specification. Upon information and belief, Katz's failure to disclose to Examiner Weaver the finding of Examiner Brown regarding a lack of written support was in violation of Katz's duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '551, '360 and '065 patents asserted against Ahold unenforceable.

**B.    Katz failed to disclose adverse findings from appeal rulings.**

189.    Upon information and belief, Katz failed to inform the patent examiners of certain of the patents asserted against Ahold of the existence and outcome of certain Appeal Rulings of related patents. The outcomes of certain Appeal Rulings were, in some instances, adverse or contrary to positions Katz took during the prosecution of the patents asserted against Ahold.

190.    For example, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger patent, which is prior art to the patents asserted against Ahold, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

191.    The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least

the '156, '734, '120, '065 and '965 patents with respect to any claims reciting a multiple format limitation.

192.    Nonetheless, upon information and belief, Katz failed to inform the examiners of at least the '156, '734, '120, '065 and '965 patents of the Board of Patent Appeals and Interferences' finding that the Barger patent disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

193.    Upon information and belief, Katz intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '156, '734, '120, '065 and '965 patents unenforceable.

194.    The inequitable conduct committed by Katz with respect to the '156, '734, '120, '065 and '965 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material, thereby, rendering these related patents, including at least the '223 and '360 patents unenforceable.

V.    **Katz Intentionally Made False Claims of Priority so as to Avoid the Prior Art.**

195.    Upon information and belief, during the prosecution of several patents asserted against Ahold, Katz made false claims of priority to earlier applications with the intent to avoid prior art, as set forth below.

196.    For example, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz made the false claim that "the international application [87/00375] is not properly a reference against the present case." This assertion is false, since international application [87/00375], *i.e.*, the WO '375 application, was published more than one year prior to

- 62 -

the filing of the '734 patent, and therefore, is prior art to any new matter introduced and claimed

in the '734 patent, which was based on a continuation-in-part application. Therefore, upon

information and belief, Katz intentionally misrepresented the priority dates for certain claims

during the prosecution of the '984 patent, in order to antedate the WO '375 application.

197.    Likewise, during prosecution of the '734 patent, Katz identified U.S. Patent No.

4,792,461 to Brown ("the Brown patent") to the USPTO, but falsely stated that the pending

application's claims predated the Brown patent because they claimed priority to the '150 patent.

Amendment, January 31, 1996 at page 11-12. Contrary to Katz's assertion, however, certain of

the pending application's claims, which were directed to multiple call modes, were not entitled to

the priority date of the '150 patent because there is no support in the in the '150 patent for

multiple call modes. Therefore, upon information and belief, Katz intentionally misrepresented

the priority dates for claims during the prosecution of the '734 patent, in order to antedate the

Brown patent.

198.    Similarly, upon information and belief, during prosecution of the '734 patent,

Katz made a false claim to priority in an attempt to antedate a prior art reference by Hester. Katz

stated "the reference by Hester bears a date of 1985, apparently 'september'. In that regard, it is

noteworthy that the present application is related to a parent case filed July 10, 1985." The

parent application Katz referenced, however, does not disclose toll free calls or 900 "pay-per-

call" modes. Therefore, none the claims in the '734 patent reciting limitations directed to toll

free calls or 900 "pay-per-call" modes are entitled to claim priority to that parent application's

July 10, 1985 filing date. Therefore, upon information and belief, during the prosecution of the

'734 patent, Katz intentionally misrepresented the priority dates for such claims reciting

- 63 -

limitations directed to toll free calls or 900 "pay-per-call" modes in order to antedate the Hester reference.

199.    Likewise, upon information and belief, during prosecution of the '734 patent, Katz mischaracterized Katz's pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987.  Specifically, Katz stated "the present application is entitled to a priority date earlier than that of the subject reference." Upon information and belief, Katz's statement was false at the time it was made. At the time Katz made this statement there were claims in Katz's application (such as then pending claim 17) which contained and claimed new subject matter that was not supported by the earlier filed application, and were, therefore, not entitled to an earlier priority date.  Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

200.    Upon information and belief, in violation of the duty of good faith and candor, Katz made the above-identified false claims to priority in order to avoid the prior art and to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

201.    In addition, the inequitable conduct committed by Katz with respect to the '984 and '734 patents taints other related patents, including  the '120 and '223 patents asserted against Ahold, which claim priority to these patents and which claim related subject matter to which the prior art patents are material, rendering these related patents unenforceable.

**VI.    Conclusion**

202.    As set forth above, Katz engaged in a pattern and practice of inequitable conduct throughout the prosecution of the patents asserted against Ahold and/or other related patents that

- 64 -

infected, either directly or indirectly, all of the patents asserted against Ahold, thereby rendering them unenforceable for inequitable conduct.

203.    Ahold is, therefore, entitled to a judicial declaration that each of the patents asserted against Ahold is unenforceable.

### Demand For A Jury Trial

Ahold demands a jury trial, pursuant to Fed. R. Civ. P. 38(b), as to all issues that may be tried by a jury.

### Prayer For Relief

WHEREFORE, Ahold prays for relief as follows:

(i)     That RAKTL recover nothing and that its Amended Complaint be dismissed with prejudice;

(ii)    That the Court deny any injunctive relief in favor of RAKTL and against Ahold;

(iii)   That the Court declare that Ahold has not and does not directly infringe, induce infringement or contribute to the infringement of any claim of the patents asserted against Ahold;

(iv)    That the Court declare and order that each of the patents asserted against Ahold is invalid;

(v)     That the Court declare and order that that each of the patents asserted against Ahold is unenforceable;

(vi)    That the Court find this case to be an exceptional case pursuant to Section 285 of the Patent Act and award Ahold its reasonable attorneys' fees in this action;

(vii)   That all costs be taxed against RAKTL; and

(viii)  That Ahold be granted such other and further relief as the Court deems just and

proper.

*Kelly E. Farnan*

Frederick L. Cottrell, III (#2555)
Cotrell@rlf.com
Kelly E. Farnan (#4395)

OF COUNSEL:                    Farnan@rlf.com
                               Richards, Layton & Finger
Patrick J. Flinn              One Rodney Square, P.O. Box 551
Robert L. Lee                 Wilmington, DE 19899
Cherri T. Gregg               (302) 651-7700
Alston & Bird LLP             *Attorneys For Defendants Ahold USA, Inc., The*
One Atlantic Center           *Stop & Shop Supermarket Company LLC, Giant*
1201 West Peachtree Street    *Food Stores, LLC, Giant Food LLC and Giant Food*
Atlanta, GA 30309-3424        *Inc.*
(404) 881-7000

- 66 -

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2006, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

### BY E-MAIL AND HAND DELIVERY

Mary B. Graham, Esquire
Julia Heaney, Esquire
Morris Nichols Arsht & Tunnel
1201 North Market Street
Wilmington, Delaware 19801

Steven J. Balick, Esquire
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, PO Box 1150
Wilmington, DE 19899

I hereby certify that on November 8, 2006, the foregoing document was sent to the

following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

Robert T. Haslam
Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025-3506

Michael K. Plimack
Dale A. Rice
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA 94104-2878

Charles S. Barquist
Brian F. McMahon
Morrison & Foerster LLP
555 West Fifth Street, Suite 3500
Los Angeles, CA 90013-1024

James J. Brosnahan
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

Michael W. Vella
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130

Kelly E. Farnan (#4395)
farnan@rlf.com

RLF1-3074816-1